GRAVOIS, J.
| defendant, Jessie Havies, appeals his conviction of one count of aggravated battery, a violation of La. R.S. 14:34. On appeal, he argues that the evidence was insufficient to convict him, asserting that he was acting in self-defense. For the following reasons, we affirm defendant’s conviction and sentence.
PROCEDURAL HISTORY
On December 22, 2014, the Jefferson Parish District Attorney filed a bill of information charging defendant, Jessie Ha-vies, with one count of aggravated battery, in violation of La. R.S. 14:34. Defendant pled not guilty at his arraignment on December 23, 2014.
Trial commenced on April 26, 2016 before a six-person jury, and on April 27, 2016, the jury found defendant guilty as charged. Sentencing was set on May 9, 2016. That day, defendant filed a motion for a new trial, which was denied in open court. After waiving sentencing delays, defendant was sentenced to ten years imprisonment at hard labor. After sentencing, the trial court denied defendant’s motion for reconsideration of his sentence. Defendant then filed a motion for an appeal, which was granted in open court.
Also on May 9, 2016, after defendant’s appeal was granted, the State filed a habitual offender bill of information against defendant, alleging that he was a third felony offender, to which defendant stipulated. The trial judge then vacated defendant’s previously imposed sentence and resen-tenced defendant under the habitual offender statute to twelve years imprisonment at hard labor without the benefit of probation or suspension of sentence.
FACTS
Deputy Brent Baldasaro of the Jefferson Parish Sheriffs Office testified that on August 14, 2014, he was patrolling in the Woodmere Subdivision in Harvey, Louisiana, when he was dispatched to a residence located at 2636 Max Drive in I ¿response to a report of an aggravated battery by cutting. When he arrived at the residence, Deputy Baldasaro encountered a man on the driveway by the name of “Johnny Pearson” who said that he was the victim’s uncle.[1] The man advised Deputy Baldasaro that he did not witness the stabbing, but said that his nephew, Byron Lemon, was injured and was inside of the residence. Deputy Baldasaro observed blood splatter on the driveway, and upon entering the residence, saw more blood splatter in the kitchen. Byron was sitting in the kitchen with a bloody t-shirt pressed to his abdomen. Byron told Deputy Balda-saro that he had been stabbed. Deputy Baldasaro observed that Byron had a puncture wound to his abdomen and EMS was called. When questioned about how he was stabbed, Byron told Deputy Baldasaro that he was walking home when he was approached by “an unidentified black male with dreadlocks wearing black shorts and a white t-shirt” who produced a knife and stabbed him. He also told Deputy Baldasa-ro that he previously had an altercation with the man who stabbed him.
*460 Lorenzo Lemon, the victim’s brother, testified that on August 14, 2014, he asked his mother for some money for cigarettes. She responded that Byron had just walked to the store down the street from their home on Max Drive. Lorenzo started walking to the store to catch up with Byron, when Lorenzo was approached by defendant, who asked him for a cigarette.[2] Lorenzo responded that he did not have any. Additionally, Lorenzo told defendant that he would appreciate it if “he wouldn’t walk through [his] momma’s backyard.” Lorenzo then walked to the store, where he met up with Byron and his friend, a man whom he knew as “Mississippi.” Later, when he, Byron, and “Mississippi” were walking home from the store, defendant “was waiting for [them] to come back.” Byron and defendant then got into an argument. Lorenzo testified that defendant was alone when he had Rencountered him earlier, but had five or six people with him when they encountered him on the way back home from the store. Defendant was antagonizing Byron, saying “come on, let’s fight.”
Lorenzo testified that he pushed his brother to keep him walking and tried to deescalate the situation, but Byron pushed past Lorenzo and “ran up on” defendant. Defendant then pulled out a knife and stabbed Byron in his stomach. Lorenzo described the knife as a “fold-up” type knife and indicated that it was about the length of his hand. He testified that one of defendant’s friends in the crowd gave it to defendant. Also, Lorenzo indicated that after Byron was stabbed, Byron ran away and defendant ran after him, swinging the knife. Lorenzo testified that Byron was not armed with any weapon. After the fight, Lorenzo went back to the house, where his brother was sitting in the kitchen and called 9-1-1. He waited for the police to come, but then he left to find defendant. Later, Lorenzo identified defendant in a photographic lineup as “the one that stabbed [his] brother.”
Deputy Miguel Dukes with the Jefferson Parish Sheriffs Office testified that he responded to a call of an aggravated battery by cutting on August 14, 2014 on Max Drive. When he arrived, he spoke with Deputy Baldasaro, who gave him the description of the possible suspect. Looking for someone matching that description, he canvassed the area and encountered Lorenzo Lemon. Lorenzo pointed to another man, indicating that the man had been involved in the altercation. Specifically, Lorenzo stated that the man, later identified as Terry Antoine, gave defendant the knife used in the stabbing. Deputy Dukes handcuffed both Lorenzo and Mr. Antoine and transported them back to the Detective Bureau. After speaking with them, he was able to develop defendant as the suspect, as they both indicated that he was the one who had stabbed Byron Lemon.
Terry Antoine also testified regarding the events leading up to the stabbing of Byron Lemon on August 14, 2014. He testified that he was outside near 14 defendant, when “three dudes ... had some words with [defendant]” about “going in their yard.” He recalled that one of them, wearing camouflage shorts,[3] was the one that told defendant about the issue with their yard; however, after “a few more words,” they continued walking down the road. Mr. Antoine testified that when the “three dudes” came back, “they had some more words,” but they kept walking, and defendant followed them. At one point, the two men, the one in camouflage shorts and the victim, faced defendant, and Mr. Antoine *461 described that “they got about inches in front of each other, and before you know it, someone was stabbed.” He also testified that nobody “threw a punch.” On cross-examination, Mr. Antoine said that the Lemon brothers were taunting defendant to fight.
Byron Lemon also testified about the events of August 14,2014. He testified that he and his brother Lorenzo were walking to the store down the street, when Lorenzo spotted defendant and told Byron that he was the one that had been cutting through their backyard. On the way back from the store, Byron approached defendant and spoke with him about his displeasure at defendant’s trespassing through his mother’s backyard. He described that they started “fussing,” but then the arguing escalated to “bad-bad.” Byron also said that defendant followed them as they were walking back home; additionally, defendant had about four people with him at that time. He testified that after he and defendant started arguing, it was his intention to fight, so he put up his fists to fight. Byron testified that Lorenzo was behind him telling him not to fight. He described that he put up his fists, but then defendant “just came in, and he just stabbed” him. He testified that he started running, but defendant was chasing him, still armed with the knife. Byron made it back to his house, EMS was called, and he was brought to the hospital, where he had surgery on his liver and remained for a few days.
| (¡Defendant testified and gave his version of the events of August 14, 2014. He denied encountering the Lemon brothers twice that day as they went to and from the store. He testified that he was sitting outside of a friend’s apartment complex by himself when Byron and Lorenzo approached him. He described that Lorenzo was the one that initially spoke to him about the issue of his passing through their mother’s backyard. However, he indicated to them that he was not in fact passing through their mother’s yard, but instead was passing through their neighbor’s yard. Defendant testified that Lorenzo “took off, and he swung” at defendant, and Byron jumped in to help his brother. He related that Lorenzo tried to hit him in the head with a bottle but missed. Defendant testified that he grabbed his work knife that he kept clipped to his belt and stabbed Byron in his stomach. He related that while people may have come outside to witness the fight, he was by himself, with Lorenzo and Byron fighting him. Defendant claimed that the two brothers “jumped him,” that one was trying to hurt him with a bottle, and that the only thing he could use in his defense was his pocket knife. He indicated that he feared for his safety and using his knife was the only way he could escape them.
ASSIGNMENT OF ERROR

Sufficiency of the evidence

In his only assignment of error, defendant argues that the evidence was insufficient to uphold his conviction. He contends that the victim and his brother were the aggressors and that he acted in self-defense, using reasonable force necessary to ward off his attackers. He does not contest that the State proved the essential elements of the offense, nor does he contest that the State proved his identification as the perpetrator, but instead asserts that he proved by a preponderance of the evidence that the stabbing was committed in self-defense. Because defendant acted in self-defense and used reasonable force to defend Lhimself, he asserts that the jury should have returned a verdict of not guilty; therefore, he argues that this Court should reverse his conviction.
*462 The State responds that it presented sufficient evidence to support the charge of aggravated battery. It contends that its presentation of three eyewitnesses and two detectives led the jury to rationally conclude that it met its burden to support defendant’s conviction of aggravated battery. Moreover, while defendant testified and presented his version of the events, the State contends that the jury obviously found issue with the credibility of his testimony and his argument of self-defense.
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674 (La. 6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Mickel, 09-0953 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La, 1/7/11), 52 So.3d 885.
The directive that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to the actual trier of fact’s rational credibility calls, evidence weighing, and inference drawing. State v. Caffrey, 08-0717 (La.App. 5 Cir. 5/12/09), 15 So.3d 198, writ denied, 09-1305 (La. 2/5/10), 27 So.3d 297. This deference to the fact finder does not permit a reviewing court to decide whether it believes a witness or whether the conviction is contrary to the weight of the evidence. Id. As a result, under the Jackson standard, a review of the record for sufficiency of the evidence does not require the reviewing court to determine whether the evidence at the trial established guilt beyond a reasonable doubt, but whether, upon review of the whole record, any |7rational trier of fact would have found guilt beyond a reasonable doubt. State v. Jones, 08-0020 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.
In making this determination, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence. State v. Caffrey, supra. Indeed, the resolution of conflicting testimony rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. See State v. Bailey, 04-0085 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 955, writ denied, 04-1605 (La. 11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Dixon, 07-0915 (La.App. 5 Cir. 3/11/08), 982 So.2d 146, 153, writ denied, 08-0987 (La. 1/30/09), 999 So.2d 745.
Defendant was convicted of aggravated battery, in violation of La. R.S. 14:34. To support a conviction of aggravated battery, the State must prove: (1) the defendant intentionally used force or violence against the victim; (2) the force or violence was inflicted with a dangerous weapon; and (3) the dangerous weapon was used in a manner likely to cause death or great bodily harm. La. R.S. 14:34; State v. Rainey, 98-436 (La.App. 5 Cir. 11/25/98), 722 So.2d 1097, 1102, writ denied, 98-3219 (La. 5/7/99), 741 So.2d 28. A dangerous weapon is any instrumentality which, in the manner used, is calculated or likely to produce death or great bodily harm. La. R.S. 14:2(A)(3).
In the present case, defendant does not challenge the essential statutory elements *463 of the offense, nor does he contest his identification as the perpetrator. Rather, he maintains that he proved by a -preponderance of the evidence that the 18stabbing was done in self-defense, and therefore, the jury should have found him not guilty.[4]
The fact that an offender’s conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. La. R.S. 14:18. The use of force or violence upon the person of another is justifiable when committed for the purpose of preventing a forcible offense against the person, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense. La. R.S. 14:19(A). The aggressor or the person who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21. When self-defense or the defense of another is claimed by the defendant in a non-homicide case, the defendant has the burden of proof by a preponderance of the evidence that his actions were in self-defense or in defense of others. State v. Bannister, 11-602 (La.App. 5 Cir. 2/14/12), 88 So.3d 628, 635, writ denied, 12-628 (La. 6/15/12), 90 So.3d 1060.
In the present case, the jury was presented with conflicting testimony regarding the circumstances of the stabbing. According to Lorenzo and Byron Lemon, while they argued with defendant regarding his alleged trespassing on their mother’s yard, it was defendant who followed them as they were walking away, and who goaded Byron into a fist fight. Moreover, their testimony and Mr. Antoine’s testimony were consistent in that defendant stabbed Byron before he was able to deliver a blow to defendant. Testimony also established that Byron did not have a weapon and was unarmed when defendant used his pocket knife to stab him in the stomach. Also after Byron was stabbed, testimony showed that defendant chased after him, still swinging the knife.
bln contrast to the testimony presented by the State, defendant presented his own version of the events. According to defendant, he was by himself when the Lemon brothers “jumped him,” using a bottle as a weapon. During his testimony, defendant maintained that he was just trying to defend himself from the two brothers and that he stabbed Byron only as a means of protecting himself.
After listening to this conflicting evidence, the jury found defendant guilty of aggravated battery. By returning the guilty verdict, the jury obviously rejected defendant’s account of the events that led up to the stabbing of Byron Lemon. The credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. It is not the function of the appellate court to assess credibility or reweigh the evidence. State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442, 443; State v Falcon, 06-798 (La.App. 5 Cir. 3/13/07), 956 So.2d 650, 657.
Viewing the evidence presented at trial in the light most favorable to the prosecution, we that find that a rational trier of fact could have determined that defendant did not prove by a preponderance of the evidence that the stabbing was done in self-defense. The jury heard testimony that defendant was the initial aggressor, and could have also concluded that the force he used was unreasonable or unnecessary to stop the offense against *464 him. Accordingly, this assignment of error is without merit.
ERRORS PATENT REVIEW
The record was reviewed for errors patent, according to La. C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La. 1975), and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990). No errors patent were found.
CONCLUSION
For the foregoing reasons, defendant’s conviction and sentence are affirmed.
AFFIRMED

. Deputy Baldasaro later testified that the man who identified himself as the victim’s uncle was not in fact named "Johnny Pearson" and that he did not learn his real name. Later testimony revealed that the man was actually Harry Bridgewater, the victim's uncle.

. Byron was not with Lorenzo at that time.

. The testimony at trial established that Lorenzo was wearing camouflage shorts at the time of this incident.

. The jury was instructed to consider the statutory elements of self-defense.