GARRETT, J.
The defendant, Keith Barron, appeals his conviction for aggravated battery. For the following reasons, we affirm the conviction and sentence.
FACTS
In December 2015, Barron had an altercation with the victim, Tonya Ard, at the apartment they shared in Monroe. Barron cut Ard's throat and stabbed her numerous times in the abdomen. Ard survived the attack and identified Barron as the assailant. An arrest warrant was issued for Barron. He was found in Shreveport and arrested pursuant to the warrant. He was charged with attempted second degree murder. Barron claimed that he acted in self-defense.[1] Following a trial, the jury *1180 convicted Barron of the responsive verdict of aggravated battery. Motions for post verdict judgment of acquittal, arrest of judgment, and new trial were denied. Barron was sentenced to serve ten years at hard labor. He appealed, claiming there was insufficient evidence upon which to base the conviction and that the trial court gave an erroneous jury instruction on self-defense.
SUFFICIENCY OF THE EVIDENCE
Barron claims there was insufficient evidence to prove beyond a reasonable doubt that he was guilty of aggravated battery. This argument is without merit.
Legal Principles
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L. Ed. 2d 560 (1979) ; State v. Tate , 2001-1658 (La. 5/20/03), 851 So.2d 921, cert. denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L. Ed. 2d 248 (2004) ; State v. Carter , 42,894 (La. App. 2 Cir. 1/9/08), 974 So.2d 181, writ denied , 2008-0499 (La. 11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford , 2005-0477 (La. 2/22/06), 922 So.2d 517 ; State v. Dotie , 43,819 (La. App. 2 Cir. 1/14/09), 1 So.3d 833, writ denied , 2009-0310 (La. 11/6/09), 21 So.3d 297.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton , 436 So.2d 471 (La. 1983) ; State v. Speed , 43,786 (La. App. 2 Cir. 1/14/09), 2 So.3d 582, writ denied , 2009-0372 (La. 11/6/09), 21 So.3d 299 ; State v. Parker , 42,311 (La. App. 2 Cir. 8/15/07), 963 So.2d 497, writ denied , 2007-2053 (La. 3/7/08), 977 So.2d 896 ; State v. Robinson , 50,643 (La. App. 2 Cir. 6/22/16), 197 So.3d 717, writ denied , 2016-1479 (La. 5/19/17), 221 So.3d 78, 2017 WL 2784240 ; State v. Sullivan , 51,180 (La. App. 2 Cir. 2/15/17), 216 So.3d 175.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith , 1994-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to the fact finder's decision to accept or reject the testimony of a witness in whole or in part. State v. Eason , 43,788 (La. App. 2 Cir. 2/25/09), 3 So.3d 685, writ denied , 2009-0725 (La. 12/11/09), 23 So.3d 913 ; State v. Hill , 42,025 (La. App. 2 Cir. 5/9/07), 956 So.2d 758, writ denied , 2007-1209 (La. 12/14/07), 970 So.2d 529 ; State v. Randle , 49,952 (La. App. 2 Cir. 6/24/15), 166 So.3d 465 ; State v. Casaday , 49,679 (La. App. 2 Cir. 2/27/15), 162 So.3d 578, writ denied , 2015-0607 (La. 2/5/16), 186 So.3d 1162.
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, a reviewing court may impinge on the fact finder's discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey , 1999-0023 (La. 1/26/00), 775 So.2d 1022, cert. denied , *1181 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000) ; State v. Green , 49,741 (La. App. 2 Cir. 4/15/15), 164 So.3d 331.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, supra ; State v. Allen , 36,180 (La. App. 2 Cir. 9/18/02), 828 So.2d 622, writs denied , 2002-2595 (La. 3/28/03), 840 So.2d 566, 2002-2997 (La. 6/27/03), 847 So. 2d 1255,cert. denied , 540 U.S. 1185, 124 S.Ct. 1404, 158 L. Ed. 2d 90 (2004). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Randle, supra ; State v. Francis , 51,048 (La. App. 2 Cir. 1/11/17), 213 So.3d 1213.
A battery is the intentional use of force or violence upon the person of another. See La. R.S. 14:33. An aggravated battery is a battery committed with a dangerous weapon. See La. R.S. 14:34. "Dangerous weapon" includes any instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm. See La. R.S. 14:2. Aggravated battery is a responsive verdict to attempted second degree murder. La. C. Cr. P. art. 814(4).
La. R.S. 14:18 provides, in part:
The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed under the following circumstances:
....
(7) When the offender's conduct is in defense of persons or of property under any of the circumstances described in Articles 19 through 22.
La. R.S. 14:19 provides, in pertinent part:
A. (1) The use of force or violence upon the person of another is justifiable under either of the following circumstances:
(a) When committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense.
....
(2) The provisions of Paragraph (1) of this Section shall not apply where the force or violence results in a homicide.
In a non-homicide situation, a claim of self-defense requires a dual inquiry: first, an objective inquiry into whether the force used was reasonable under the circumstances; and, second, a subjective inquiry into whether the force used was apparently necessary. State v. Robinson , 37,043 (La. App. 2 Cir. 5/14/03), 848 So.2d 642 ; State v. Williams , 50,004 (La. App. 2 Cir. 9/30/15), 178 So.3d 1051 ; State v. Glover , 47,311 (La. App. 2 Cir. 10/10/12), 106 So.3d 129, writ denied , 2012-2667 (La. 5/24/13), 116 So.3d 659.
Discussion
The evidence adduced at trial revealed the following. Ard admitted that she had a recent felony conviction for possession of PCP and was on probation. She was 40 years old and had three children. Her children were not living with her at the time of the incident at issue here because she had no furniture or electricity in her apartment. She met Barron through a childhood friend named Carlos.[2] In December *1182 2015, Jefferson told her that Barron did not have a place to live and suggested that he move into the apartment with her. Ard agreed to the arrangement. She claimed that Barron did not help pay rent or other bills.
Ard stated that Barron had a lock-blade knife that he always carried in his back pocket. She had seen him use the knife to shave his head. According to Ard, on December 13 or early December 14, 2015, Barron knocked on the door of the apartment. Ard had never given him a key. They walked to a convenience store and purchased beer. After drinking some of the beer at the apartment, Barron asked her for sex, but she refused. He became angry and she told him to get his things and leave. Barron came out with a suitcase and asked Ard to help him find some of his belongings. At that point, he grabbed her by the hair, cut her throat, and stabbed her in the abdomen. She said he told her was not going to kill her, but was going to hurt her "real bad" to make her shut up. A knife was found at the scene and Ard identified it at trial as the weapon Barron used in the attack.
Ard saw Barron wash the knife off in the sink. She said that someone knocked on the door and she was able to get out and crawl to a neighbor's apartment. When police were summoned, Ard said she thought she told them that Barron attacked her, and she also mentioned that he sometimes stayed with Jefferson. Ard was taken to the hospital where her neck wound was sutured and she had surgery for her abdominal wounds. She was hospitalized for three days.
Officer Demetrice Underwood of the Monroe Police Department was dispatched to the scene at 2:56 a.m. regarding the attack. Clarence Reed, one of the neighbors, identified Ard for Underwood. He said Ard came to his apartment knocking and screaming for help. Reed called 911. When Underwood arrived, Ard was lying in the doorway of a neighboring apartment with a bloody towel covering her throat. She had lost a lot of blood. Underwood could see her vocal cords or other anatomical structures through the cut on Ard's throat. Underwood said that Ard was able to respond to questions, but her responses were not clear and he had to ask her more than once. Underwood said that Ard's eyes were rolling back in her head.
According to Underwood, Ard said, "Carlos did this" and described him as a heavy-set, dark-skinned, bald man who worked at a local restaurant. This description fit the defendant, but not Jefferson. During the investigation, Jefferson was described as mixed race, possibly Indian, Mexican, and/or Puerto Rican, having a very fair complexion with straight brown hair.
Underwood observed blood on the doorstep of Ard's apartment. He also observed blood in the bathroom and bedroom. Underwood stated that there were several neighbors present at the scene with the victim, and there were also a number of people in a nearby field.
Detective Kevin Cope, an investigator with the Monroe Police Department, went to the scene shortly after the attack. He observed blood in the hallway of Ard's apartment, in the bathroom, and on the walls. A knife and shirt were recovered at the scene. A suitcase and a beer can were found by the front door.
Cope said the names "Keith" and "Carlos" came up at the scene. At one point, Cope received information that "Keith Blakes" might be involved, but could not remember where that information came from. A photo of that individual was included in the first photo lineup shown to Ard at the hospital, but she did not identify him as the assailant.
*1183 According to Cope, Ard told him to talk to Jefferson, because Barron stayed with him occasionally. Cope found Jefferson, who told him where Barron worked. A second photo lineup was prepared with Barron's picture in it. Cope said he was confident that Ard "had her faculties about her" when she viewed the second photo lineup presented to her at the hospital and identified Barron as her attacker. An arrest warrant was obtained, and Barron was later located in Shreveport.
After the state rested, the defendant presented witnesses in his defense. Carron Lamar Harris testified that he had known Jefferson and Ard since their school days together. At the time of the trial, Harris was in jail, but had not yet been convicted. The crime he was accused of was not specified. Harris acknowledged that he had sold drugs in the past.
Harris said that on the afternoon before the stabbing, he and Jefferson visited Ard at her apartment. Harris claimed that Ard and Jefferson smoked PCP that afternoon. He and Jefferson left Ard's apartment about 3:00 p.m. Harris said that he heard about the attack on Ard the next day.
Barron testified in his own defense. His version of what transpired differed from that related by Ard. He was 40 years old and was from Shreveport. He went to Monroe to work in March 2015, and worked two jobs simultaneously at different restaurants. Barron worked with Jefferson at one of the restaurants and became acquainted with Ard. He moved into her apartment in November 2015. Barron stated that he had sex with Ard on two occasions, but he was not her boyfriend. He claimed that Jefferson frequently came to the apartment to smoke PCP and have sex with Ard.
According to Barron, he left the apartment for work on December 13, 2015, at 6:00 a.m. and returned around midnight. When he arrived, Ard began calling him a liar and asked him for money to buy drugs. He gave her $20 and she left the apartment for two hours. When she returned, she said she had smoked PCP and asked for $10 to buy more drugs. Barron and Ard walked to a convenience store so he could get change to give her. Barron said there were lots of people at the store and the police were trying to disperse a crowd, so he left without getting any change. Barron left the store without Ard and began walking back to the apartment. Ard and a man with gold teeth walked up behind him. Ard began cursing at Barron. He claimed the man was telling Ard things to say to him. Barron said he told Ard and her companion to walk a different route, and Barron chose a longer route to the apartment.
When he got back to the apartment, Barron gathered his things to leave. Ard was already at the apartment and confronted him again. Barron testified that Ard scratched him on the left forearm and he looked up to see that she was holding his knife. He said he saw the knife coming down and tried to deflect it, but it came down between his right thumb and hand, causing a deep cut.
Barron said he threw Ard down and pushed her. Barron got control of the knife and cut Ard's throat. Barron admitted cutting Ard, but contended that he was defending himself, trying to disarm her, and the situation was brought on by her actions. Barron never accounted for the stab wounds to Ard's abdomen. Barron said he washed the blood off his hand and then tried to help Ard, who was on the bedroom floor holding her neck. He claimed he tried several times to get Ard up, but she fought him off. She was taller than him and the blood on his hand hindered his efforts to lift her off the floor.
A man came in the front door of the apartment and Ard was able to get out, *1184 calling for help. She was followed out of the apartment by the man. Barron stated that several guys then jumped him and beat him up "pretty good." He claimed the beating lasted at least five minutes and he was rendered unconscious. When he regained consciousness, Barron got up and hobbled away, because more people were coming toward him. He said he went a couple of streets over and stayed in an abandoned house for 24 hours. He then walked to a friend's house and arranged for a ride to Shreveport. Barron did not seek medical attention for his alleged injuries.
On December 17, he became aware that the police were looking for him. He was eventually arrested and returned to Monroe. At that point, he received medical attention for his hand, which required nine stitches.
Barron acknowledged that he had an extensive criminal record, including cruelty to a juvenile, aggravated battery, illegal carrying of a weapon, and aggravated flight from an officer.
Ard testified that the police misunderstood her when they thought she said Jefferson attacked her and denied describing him as being dark-skinned with a bald head. She said she did not remember what she first told the police. She denied smoking PCP on December 13, 2015, asking Barron for money to buy drugs, being angry with Barron for not giving her money, or attacking Barron with a knife. Ard did not know how Barron's hand was cut.
Barron argues on appeal that the evidence was not sufficient to support the conviction. He contends that Ard was high on PCP and attacked him when he refused to give her money to buy drugs, and he cut her in self-defense. Barron points to the testimony of Harris to show that Ard smoked PCP on the date of the incident. He argues that, due to Ard's drugged state at the time of the incident, she initially identified others as her attacker. Barron noted that Ard never accounted for how his hand was injured in the incident. Based on these factors, Barron claims that Ard's testimony was not credible and did not establish that he committed aggravated battery.
The evidence and Barron's own testimony showed that he cut Ard's throat and stabbed her numerous times in the abdomen, even though he contended he did so in self-defense. Ard denied attacking Barron and testified that he stabbed her because he was angry that she refused to have sex with him. The versions of events given by Barron and Ard are conflicting, and the jury obviously chose to believe Ard. This decision was a credibility determination, and the jury rationally chose to accept the testimony of Ard and reject that of Barron. There were no internal contradictions or irreconcilable conflicts between Ard's testimony and the physical evidence.
Although Barron points out that Ard originally said that Jefferson attacked her, Barron admitted that he cut Ard's throat. Therefore, there was no issue as to the identity of the person who harmed Ard. Her initial description of the assailant matched Barron's appearance, not Jefferson's. Also, contrary to Barron's argument in his brief, Ard did not identify Keith Blakes as the attacker. At trial, Detective Cope said he was not sure how that name surfaced in the investigation. After Ard received medical treatment and was in a stabilized condition, she positively identified Barron as her attacker.
In addition to his own self-serving testimony, Barron points to the testimony of Harris that Ard smoked PCP on the date of the offense. However, Harris's testimony, if believed, showed that Ard smoked PCP before 3:00 p.m. on the date of the *1185 incident, approximately 12 hours before Barron cut Ard with the knife.
Although Barron was charged with attempted second degree murder, the jury convicted him of the responsive verdict of aggravated battery. To find Barron guilty of this offense, the state was required to prove beyond a reasonable doubt that Barron engaged in the intentional use of force or violence upon Ard with a dangerous weapon. Barron's actions in intentionally cutting Ard's throat and stabbing her in the abdomen with a knife were proven beyond a reasonable doubt and were sufficient to support his conviction for this offense.
Further, the jury rejected Barron's claim of self-defense. Barron admitted cutting Ard. The evidence and testimony showed that her throat was so deeply lacerated that anatomical structures were visible through the wound. In addition, she was stabbed numerous times in the abdomen, requiring surgery. Even if the jury had believed Barron's testimony that Ard attacked him, the nature and severity of her injuries do not support a finding that Barron's actions were justified to prevent an attack upon his person. The brutality and severity of Ard's injuries clearly demonstrate that the force or violence used by Barron was not reasonable under the circumstances and was not apparently necessary. Therefore, his claim of self-defense was properly rejected by the jury.[3]
JURY INSTRUCTION ON SELF-DEFENSE
On appeal, Barron contends that the trial court erred in instructing the jury that he had the burden of proving self-defense in a non-homicide case. Contrary to Barron's argument in his appellate brief, there was no objection by the defense to this jury instruction.
A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury. La. C. Cr. P. art. 801(C). Because the defense did not object to the jury instruction and, in fact, approved it on numerous occasions on the record as a correct statement of the law, Barron cannot now object to the instruction on appeal. Further, there was no error in the instruction given under the circumstances presented here.
Legal Principles
Self-defense in a homicide case is governed by La. R.S. 14:20. Self-defense in a non-homicide case, such as the present matter, is governed by a separate statute, La. R.S. 14:19, set forth above. In Louisiana, the burden of proving self-defense in a non-homicide case has been the matter of some discussion. In State v. Freeman , 427 So.2d 1161 (La. 1983), the Louisiana Supreme Court noted that different statutory standards exist to justify the use of force or violence under La. R.S. 14:19 and 20, depending on whether a homicide results. In a non-homicide case, a claim of self-defense requires a dual inquiry: first, an objective inquiry into whether the force used was reasonable under the circumstances; and, second, a subjective inquiry into whether the force used was apparently necessary. The court in Freeman observed *1186 that the burden of persuasion in proving self-defense in a non-homicide situation, which entails a subjective as well as an objective inquiry, could arguably be on the defendant since a subjective inquiry is involved. However, in disposing of the issues before it, the court in Freeman found it unnecessary to decide definitively whether the state or the defendant had the burden of proof in a non-homicide case.
In State v. Cheatwood , 458 So.2d 907 (La. 1984), the Louisiana Supreme Court recognized that our statutory criminal law does not directly address the burden of proof for "defenses." The court found there was a logical distinction between defenses which actually defeat an essential element of the offense, such as intoxication or mistake of fact, which preclude the presence of the mental element of the offense, and those defenses which present exculpatory circumstances that defeat culpability despite the state's proof beyond a reasonable doubt of all of the essential elements. In Cheatwood , the court observed that defenses such as justification are truly "affirmative" defenses because they do not negate any element of the offense, and it is logical to conclude that the legislature intended the defendant to prove by a preponderance of the evidence the exculpatory circumstances constituting the affirmative defense.
This circuit has repeatedly held that the burden of proving self-defense in a non-homicide case rests with the defendant to prove the defense by a preponderance of the evidence. See State v. Williams, supra ; State v. Jones , 49,396 (La. App. 2 Cir. 11/19/14), 152 So.3d 235, writ denied , 2014-2631 (La. 9/25/15), 178 So.3d 565 ; State v. Glover, supra ; State v. Cheatham , 38,413 (La. App. 2 Cir. 6/23/04), 877 So.2d 164, writ denied , 2004-2224 (La. 6/24/05), 904 So.2d 717 ; State v. Robinson, supra ; State v. Mason , 499 So.2d 551 (La. App. 2 Cir. 1986).
The third and fifth circuits also appear to follow this rule. See State v. Baker , 2008-54 (La. App. 3 Cir. 5/7/08), 986 So.2d 682 ; State v. McBride , 2000-00422 (La. App. 3 Cir. 11/15/00), 773 So.2d 849, writ denied , 2001-0294 (La. 2/8/02), 807 So.2d 858 ; State v. Wright , 1999-1137 (La. App. 3 Cir. 3/1/00), 758 So.2d 301, writ denied , 2000-1614 (La. 3/9/01), 786 So.2d 118 ; State v. Joubert , 97-1093 (La. App. 3 Cir. 2/4/98), 705 So.2d 1295, writ denied , 1998-1525 (La. 10/30/98), 723 So.2d 973 ; State v. Hall , 606 So.2d 972 (La. App. 3 Cir.1992), writ denied , 644 So.2d 385 (La. 1994) ; State v. Perkins , 527 So.2d 48 (La. App. 3 Cir. 1988) ; State v. Havies , 16-635 (La. App. 5 Cir. 3/15/17), 215 So.3d 457 ; State v. Strickland , 11-715 (La. App. 5 Cir. 3/27/12), 91 So.3d 411 ; State v. Bannister , 11-602 (La. App. 5 Cir. 2/14/12), 88 So.3d 628, writ denied , 2012-0628 (La. 6/15/12), 90 So.3d 1060 ; State v. Nailor , 10-1062 (La. App. 5 Cir. 11/15/11), 78 So.3d 816, writ denied , 2011-2780 (La. 4/27/12), 86 So.3d 626 ; State v. Rainey , 98-436 (La. App. 5 Cir. 11/25/98), 722 So.2d 1097, writ denied , 98-3219 (La. 5/7/99), 741 So.2d 28 ; State v. Barnes , 491 So.2d 42 (La. App. 5 Cir. 1986).
The fourth circuit has a split in its circuit as to where the burden of proof lies. See State v. Canales , 2014-0663 (La. App. 4 Cir. 12/10/14), 156 So.3d 1183, writ denied , 2015-0048 (La. 11/6/15), 180 So.3d 306 ; State in Interest of A.W. , 2013-1198 (La. App. 4 Cir. 3/13/14), 137 So.3d 728 ; State v. Byrd , 2012-0556 (La. App. 4 Cir. 6/5/13), 119 So.3d 801, writ denied , 2013-1589 (La. 1/27/14), 130 So.3d 957 ; State v. Cooks , 2011-0342 (La. App. 4 Cir. 12/14/11), 81 So.3d 932, writ denied , 2012-0112 (La. 5/18/12), 89 So.3d 1189 ; State v. Boudreaux , 2008-1504 (La. App. 4 Cir. 9/29/10), 48 So.3d 1144, writ denied , 2010-2434 (La. 4/8/11), 61 So.3d 682 ; State v. Fluker , 618 So.2d 459 (La. App. 4 Cir. 1993).
*1187 Discussion
In this case, Barron requested that the jury be instructed on the law of self-defense. Pursuant to Barron's request, the trial court prepared jury charges which were approved by both the state and the defense. During closing argument, Barron acknowledged that he had the burden of proving self-defense. The following instruction on self-defense was given in this case:
Now, the defendant has raised a legal justification claim of self-defense. The use of force or violence upon the person of another is justifiable for the purpose of preventing a forcible offense against one's person if the force used is reasonable and apparently necessary to prevent the offense. A person who has not engaged in any unlawful activity and is in a place where he or she has a right to be has no duty to retreat before using force or violence for the purpose of preventing a forcible offense against [his] or her person. In such circumstances a person may stand his or her own ground and meet force with force. The possibility of retreat shall not be considered as [a] factor in determining whether or not the person had a reasonable belief that the use of force or violence was reasonable and apparently necessary to prevent the forcible offense against his or her person. Thus if you find that the defendant committed the offense charged for the purpose of preventing a forcible offense against his person, and 2) that the amount of force [or] violence used was reasonable and 3) that the force or violence was apparently necessary to prevent the forcible offense then you must find the defendant not guilty. A defendant who seeks to justify his actions by the legal claim of self-defense must prove his claim by a preponderance of the evidence. Now, in applying all this law which the court has given to you about the evidence and the witnesses and the definitions, you must remember that the burden of proving the guilt of the accused as to the charge is on the state throughout the trial.
On numerous occasions during the trial, the attorneys discussed with the court the jury instructions to be given. Barron's attorney acknowledged that, in the second circuit, in a non-homicide case, the defendant has the burden of proving the defense of justification by a preponderance of the evidence. Barron's attorney accurately stated that the instruction was "a correct statement of the law."[4] Under all of these circumstances, there was no error in the jury instruction.
CONCLUSION
For the reasons stated above, we affirm the conviction and sentence of the defendant, Keith Barron, for aggravated battery.
AFFIRMED .

Prior to trial, Barron filed a pleading entitled "Notice of Intent to Assert Affirmative Defense of Self Defense."

Ard said she did not know Carlos's full name. It was determined during the investigation that his name is Carlos Jefferson.

We also note that, following the trial, Barron filed a motion for post verdict judgment of acquittal in the trial court, arguing that the evidence was not sufficient to support the verdict against him. The trial court determined that the jury verdict was reasonable and was supported by the evidence. The motion was correctly denied.

In his brief, Barron argues that placing the burden of proof of self-defense on him denied his presumption of innocence and violated his due process rights, which required the state to prove all the elements of aggravated battery beyond a reasonable doubt. He acknowledged that the argument was foreclosed before this court, but raised the issue to preserve it for review by the Louisiana Supreme Court or other courts. As stated above, this issue was not preserved for appeal by a contemporaneous objection. Also, we note that the United States Supreme Court rejected a similar argument in Martin v. Ohio , 480 U.S. 228, 107 S.Ct. 1098, 94 L. Ed. 2d 267 (1987).