Judgment rendered June 28, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,165-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                                    Appellee

versus

ROBERT CHARLES WILLIS                          Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 379,171

Honorable Ramona L. Emanuel, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Douglas Lee Harville

JAMES E. STEWART, SR.                          Counsel for Appellee
District Attorney

REBECCA ARMAND EDWARDS
SENAE DENEAL HALL
NANCY F. BERGER-SCHNEIDER
Assistant District Attorneys

* * * * *

Before STONE, COX, and MARCOTTE, JJ.

**STONE, J.**

This criminal appeal arises from the First Judicial District Court, the Honorable Ramona Emanuel presiding. The defendant, Robert Willis, was charged with aggravated second degree battery and child endangerment with respect to an incident that occurred "on or about October 15, 2020." At the conclusion of his jury trial, the defendant was convicted of child endangerment and the responsive offense of aggravated battery. The defendant now appeals his conviction. He argues that the trial court erred in certain evidentiary rulings and that these rulings carried a substantial possibility of affecting the outcome of the trial. For the reasons stated herein, we affirm the defendant's conviction.

## FACTS AND PROCEDURAL HISTORY

The defendant and victim had a "strained and volatile" romantic relationship which began roughly four years before the incident. At the time of the incident, they resided together along with the victim's minor child. Both the defendant and the victim admitted at trial that they had heated conflict on previous occasions. The victim admitted to hitting the defendant with a remote control. The defendant denied having ever struck her before the day in question, but gave a drastically more severe account of her prior violence. He testified that, in November 2019, she held a knife to his throat and threatened to cut him. The defendant also stated that she had thrown things at him, including the lid to a clothes hamper.

Regarding the incident in this case, the victim testified that the defendant initiated the violence when he punched her in the face three times. She was in the process of calling her father when the defendant did this. Her phone fell to the floor, and she managed to get the call out to her father

before the defendant kicked her in the ribs, which sent her "flying" across the room. She screamed "daddy please help me" as the defendant picked up the phone and ended the call. The defendant stabbed a knife blade into the victim's jaw and told her to "bleed." He also slashed her shoulder, arm, and side with the blade. The defendant continued to punch, kick, and throw her across the room. (The defendant admitted to kicking and stabbing her in his testimony). The defendant told the victim that he intended to kill her and then kill himself, and that he stopped beating and stabbing her when she agreed to get herself and her daughter in the car and leave with him. He insisted on bringing the knife wherever they went. Notably, during this incident, the victim's minor child was present and watching the violence.

The defendant testified that, during the argument, he tried to leave and indicated that he was ending their relationship. He stated that, upon hearing this, the victim took his keys, blocked his egress through the doorway, and started throwing his clothing everywhere. At this point, the defendant picked up a knife and told her to get out of the way; also, he called her a "garden tool." The defendant claims that the victim responded to this insult with a furious attack. She hit him while he had his back to her – striking him in the head with a boot and her fists, which made him trip and fall on the bed. He testified that only then did he begin to strike or stab her. He claimed that she kept attacking him even though he would "push her back with the knife" each time – and that he did not know he had "punctured her" when she kept coming at him and he kept slashing at her with a knife. While in police custody, the defendant also admitted that, aside from the boot, the victim was unarmed during the incident. Furthermore, he was completely

2

uninjured after the incident except for an alleged knot on his head – which he apparently did not mention in his medical examination upon his arrest.

During the incident, the victim's father, who testified at trial, called 911 as he heard her cry for help with "terror" in her voice. The first officer responding to the call, Deputy Chris Stafford, testified that when he initially saw the defendant, he was armed with a large butcher knife and had blood all over his arm as he exited the home. The officer drew his weapon and commanded the defendant to drop the knife, but the defendant instead went back inside still holding the knife: he again went after the victim with the knife, but she locked herself and her daughter in the bedroom. The officer heard screaming and approached the doorway with his weapon drawn, and at this point, the defendant complied.

The victim was taken to the hospital in an ambulance. She suffered severe injuries, including a collapsed or punctured lung which necessitated her being intubated. She had four knife wounds that needed stitches, as well as bruising, and residual problems with her jaw. She testified that her jaw and facial muscles no longer function properly because of nerve damage from the stabbing. This causes fluids and loose-consistency food to fall out of her mouth when she tries to eat or drink. Her chin and lip muscles spasm and cramp, and her lip sags.

The prosecution introduced pictures of the victim's injuries, which confirmed her testimony.[1] These pictures show wounds consistent with a slash or stab from a knife on the victim's jaw, shoulder, and side, and substantial bruising on various parts of her body.

---

[1] The pictures were taken a week after the incident.

The defendant made statements to Deputy Stafford after being handcuffed and Mirandized. He admitted to striking her in the chest and that he "swung [the knife] at her each time she hit him." He further admitted that the victim was unarmed. The forensic investigation revealed that the blood on the defendant's arm, on the knife blades, and on a T-shirt in the home belonged to the victim. There was also blood throughout the bedroom and bathroom – it was on the floor, the wall, the outside of the bathtub, the inside of the bathtub, and in other places. The prosecution introduced photographs depicting the bloody crime scene and published them to the jury.

The trial court allowed admission of the fact that the victim had been convicted of disturbing the peace in 2013 but excluded the facts and details underlying that (supposedly domestic violence) incident. Defense counsel expressly consented to this limitation.

The trial court also prohibited the defendant from introducing testimony regarding an alleged previous incident. Specifically, in his testimony, the defendant launched into a story about how he and the victim had an argument at the victim's grandmother's house; he did this without being asked a question that called for such an answer. The prosecution timely objected and the trial court sustained the objection. The defendant made no contemporaneous proffer with respect to the excluded evidence; nor can the court find a proffer elsewhere in the record. Likewise, he does not mention any such proffer in his brief to this court.

However, the defendant admitted that he was convicted of aggravated assault in 1994, and was convicted of violation of a protective order in 2003. Additionally, he admitted that in 2010 he was convicted of domestic abuse battery against his then girlfriend; his lawyer did not object until after he

4

answered the question.[2]  In the argument regarding the objection, defense

counsel contended that the prosecution should not be allowed to elicit details

regarding the underlying facts of the 2010 conviction.  The trial court denied

this objection, and defense counsel did not ask for a cautionary or limiting

instruction.  Thereafter, the defendant further testified that, in connection

with that incident, his then girlfriend accused him of striking her in the face

and head and throwing a knife at her; he expressly admitted that the knife

left a four-inch cut on her, and expressly declined to deny that he struck her

in the face.

The defendant now makes the following assignments of error: (1) the

trial court erred in excluding evidence of the victim's prior alleged

commission of domestic violence against the defendant (at her

grandmother's house); (2) the trial court erred in excluding her alleged

commission of domestic violence against a previous boyfriend in connection

with her 2013 disturbing the peace conviction; and (3) the trial court erred in

admitting evidence of the details of defendant's 2010 conviction for

domestic abuse battery.

## DISCUSSION

**Substantive law**

"Battery… [includes]… the intentional use of force or violence upon

the person of another."  La. R.S. 14:33.  The charged offense, aggravated

second degree battery, is defined as "a battery committed with a dangerous

---

[2] The defendant, in his brief, alleges that the prior domestic abuse battery conviction occurred in 2010; the prosecution's brief agrees with that date. However, the parts of the trial transcript the parties cite reflect that the defendant testified that this same instance of domestic abuse battery occurred in 2010 and in 2018, which is obviously impossible. Because the appellate briefs agree that the conviction occurred in 2010, the court will use that date as the date of the prior conviction for the remainder of this opinion.

weapon when the offender intentionally inflicts serious bodily injury," and carries a possible sentence of up to 15 years with or without hard labor. La. R.S. 14:34.7. Aggravated battery, which carries a 10 year maximum sentence, is a lesser included offense with respect to aggravated second degree battery. Aggravated battery is "a battery committed with a dangerous weapon." La. R.S. 14:34. Unlike aggravated second degree battery, intentional infliction of serious bodily injury is not an essential element of aggravated battery.

All types of battery are subject to the legal defense of "justification," which includes self-defense by the defendant. La. R.S. 14:18; La. R.S. 14:19. In nonhomicide cases, La. R.S. 14:19(A)(1)(a) provides that the use of force or violence upon another person is justifiable …"[w]hen committed for the purpose of preventing a forcible offense against the person … provided that the force or violence used *must be reasonable and apparently necessary* to prevent such offense." (Emphasis added). In a nonhomicide case, the defendant bears the burden of proving by a preponderance of the evidence that he acted in self-defense. *State v. Barron*, 51,491 (La. App. 2 Cir. 8/9/17), 243 So. 3d 1178, *writ denied*, 17-1529 (La. 6/1/18), 243 So. 3d 1063.

**Preservation of right to appeal evidentiary ruling**

Evidentiary rulings are subject to review for abuse of discretion. *State v. Perez-Espinosa*, 23-00111 (La. 1/28/23), 354 So. 3d 644, 645. However, a party must take certain steps to avoid waiver of the right to appeal an evidentiary ruling. To that end, La. C. Cr. P. art. 841(A), in relevant part, states:

6

An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence…It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.

This is known as the "contemporaneous objection rule."

Furthermore, in pertinent part, La. C.E. art. 103 provides:

**A. Effect of erroneous ruling.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
**(1) Ruling admitting evidence.** When the ruling is one admitting evidence, a timely objection or motion to admonish the jury to limit or disregard appears of record, stating the specific ground of objection; or
**(2) Ruling excluding evidence.** When the ruling is one excluding evidence, the substance of the evidence was made known to the court by counsel.

If the trial court rules evidence inadmissible, the proponent must make known to the court the substance of the excluded evidence in order to preserve the issue for appellate review. *State v. Magee,* 11-0574 (La. 9/28/12), 103 So.3d 285, 326. Otherwise, the proponent's right to argue the matter on appeal is waived. The issue can be preserved for appeal by proffer (or "offer of proof") either in the form of a complete record of the excluded evidence or a statement of what the proponent believes the excluded evidence would have established. *Id.* The purpose of a proffer "is to create a record of the excluded evidence so that the reviewing court will know what the evidence was and will thus be able to determine if the exclusion was improper, and if so, whether the improper exclusion constituted reversible error." *Id.* at 327.

In this case, the defendant waived his right to appeal the trial court's exclusion of his testimony regarding the alleged argument he had with the

victim at her grandmother's house.  The defendant's brief makes no mention of making a proffer of this testimony.  The record clearly shows that the defense did not make a proffer contemporaneously with the ruling excluding this evidence, and the court finds no proffer elsewhere in the record.  Therefore, there is nothing we can review.  Accordingly, the defendant waived this assignment of error.

The defendant likewise waived his right to appeal the trial court's exclusion of the details of the victim's 2013 conviction for disturbing the peace.  Indeed, defense counsel expressly consented to that ruling, thus failing to satisfy the requirements for preserving the issue pursuant to La. C.E. art. 103 and the contemporaneous objection rule.

However, the defense made a proper contemporaneous objection to the admission of the *details* defendant's prior conviction for domestic abuse battery (but did *not* object to the admission of the fact, name, and date of the conviction).  As grounds for the objection, the defense argued pursuant to La. C.E. art. 403 that risk of unfair prejudice against the defendant substantially outweighed the probative value of this evidence.

Thus, our review of the propriety of the trial court's evidentiary rulings is limited to whether the trial court abused its discretion in admitting the details of the defendant's prior conviction for domestic abuse battery.

**Propriety of admission of details of defendant's prior conviction**

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La. C.E. art. 401. The extrinsic (non-evidentiary) law governing the case determines which facts are of consequence; namely, those are

8

sections 18, 19, 33, 34, and 34.7 of Title 14 of the Louisiana Revised

Statutes.

La. C.E. art. 403 establishes the following balance test:

> Although relevant, evidence may be excluded if its
> probative value is substantially outweighed by the danger
> of *unfair* prejudice, confusion of the issues, or misleading
> the jury, or by considerations of undue delay, or waste of
> time. (Emphasis added).

"As used in the balancing test, … [t]he term 'unfair prejudice,' as to a

criminal defendant, speaks to the capacity of some concededly relevant

evidence to lure the fact-finder into declaring guilt on a ground different

from proof specific to the offense charged." *State v. Ard,* 20-221 (La. App.

5 Cir. 4/28/21), 347 So. 3d 1046, 1057.

La. C.E. art. 404(B)(1) generally bars admission of propensity

evidence (i.e., evidence of a person's prior actions to circumstantially prove

that the person acted in conformity with the prior actions on a particular

occasion).  It states:

> **Other crimes, wrongs, or acts.** (1) Except as provided in
> Article 412, evidence of other crimes, wrongs, or acts is
> not admissible to prove the character of a person in order
> to show that he acted in conformity therewith. It may,
> however, be admissible for other purposes, such as proof
> of motive, opportunity, intent, preparation, plan,
> knowledge, identity, absence of mistake or accident.[3]
> …

---

[3] The Louisiana Supreme Court, in *State v. Altenberger*, 13-2518 (La. 4/11/14), 139 So.2d 510, held that a prior crime's mere "temporal remoteness" cannot defeat its admissibility under article 404(B).

For domestic violence cases, article 412.4[4] carves out an exception to the general rule excluding propensity evidence:[5]

> A. *When an accused is charged with a crime involving abusive behavior against…a household member…or dating partner* or with acts which constitute cruelty involving a victim who was under the age of seventeen at the time of the offense, *evidence of the accused's commission of another crime, wrong, or act involving assaultive behavior against a …household member…or dating partner…may be admissible and may be considered for its bearing on any matter to which it is relevant, subject to the balancing test provided in Article 403.*
>
> …
>
> D. For purposes of this Article:
> (1) "Abusive behavior" means any behavior of the offender involving the use…of force against the person…of a …household member, or dating partner of the alleged offender. (Emphasis added).[6]

In *State v. Simmons*, 21-0547 (La. App. 4 Cir. 11/24/21), 332 So. 3d 158, 161–62, *writ denied*, 22-00112 (La. 3/15/22), 334 So. 3d 397, the Fourth Circuit held that the trial court abused its discretion in excluding

---

[4] This provision was originally enacted in 2016. In 2017, "dating partner[s]" were added to the list of victims with respect to whom the article would apply. In *State v. Ard*, *supra*, the Fifth Circuit, due to the newness of article 412.4, looked to jurisprudence applying article 412.2 (which allows the accused's prior acts showing a lustful disposition toward children to be admitted for any relevant purpose in a sex offense case) for guidance in applying article 412.4.

[5] *Jones v. State*, 22-269 (La. App. 5 Cir. 7/6/22), 346 So. 3d 339, 345.

[6] Article 412.4 defines "household member and "dating partner" as follows:
> "Dating partner" means any person who is involved or has been involved in a sexual or intimate relationship with the offender characterized by the expectation of affectionate involvement independent of financial considerations, regardless of whether the person presently lives or formerly lived in the same residence with the offender. "Dating partner" shall not include a casual relationship or ordinary association between persons in a business or social context.
> "Household member" means any person presently or formerly living in the same residence with the offender and who is involved or has been involved in a sexual or intimate relationship with the offender, or any child presently or formerly living in the same residence with the offender, or any child of the offender regardless of where the child resides.

10

article 412.4 evidence based on the temporal remoteness of those prior acts (and a factually incorrect belief regarding the content of that evidence).[7]

In August of 2019, Simmons, the defendant, was charged with stalking, second degree murder using a firearm, possession of a firearm by a convicted felon, and obstruction of justice.[8] The victim was Simmons' prior girlfriend ("victim"). The prosecution alleged that after the termination of their romantic relationship, the defendant began stalking the victim; this escalated to threats of physical violence, then actual violence, and ultimately murder (using a firearm). The prior act evidence sought to be introduced was described as follows:

> [F]rom December 21, 2011 to January 15, 2012, the defendant also engaged in stalking of a previous former dating partner, [Previous Girlfriend]. Again, the stalking escalated to threats of physical violence, then actual violence, and ultimately, battery through the use of a deadly weapon. Fortunately, [Previous Girlfriend] survived her encounter with the defendant. See attached Las Vegas, Nevada Police reports and Indictment.

*Id.* at 160. (The article 412.4 evidence involved a different victim).

The Fourth Circuit found that the trial court abused its discretion in excluding the article 412.4 evidence. Citing *State v. Altenberger, supra* at n.3, the *Simmons* court explained:

> Although the prior crime occurred numerous years before the incident at issue herein, a lapse in time will generally go to the weight of the evidence, rather than to its admissibility.

---

[7] In conducting the article 403 balance test, the district court held that "the danger of unfair prejudice substantially outweighs the probative value of the evidence at issue" because "[the] prior domestic violence incident occurred a decade prior to the present case and involved a different victim" and "apart from the mere fact that a [prior] domestic violence incident occurred, there is no pattern of stalking or any other pattern of substantial similarity between the prior incident and the present case."

[8] The *Simmons* opinion does not provide the date of the alleged offense.

In this case, the admission of the details of the defendant's prior conviction was not an abuse of discretion. Those details bear a striking (or stabbing) similarity to the facts *sub judice*. Both incidents involved the defendant battering his girlfriend-victim with his fists and cutting his girlfriend-victim with a knife. Indeed, in his trial testimony, the defendant was confronted with the facts underlying this prior conviction, and he did not deny that he punched the victim in the prior incident in the face. Furthermore, he expressly admitted to cutting her with a knife. Thus, the details of the prior offense had great probative value in demonstrating the defendant's propensity for beating and knifing his girlfriends, and admission for this purpose is authorized under article 412.4. The prior conviction's details were also highly probative for impeaching the defendant's testimony that he was acting in self-defense. The trial court did not abuse its discretion in holding that the danger of unfair prejudice did not substantially outweigh the probative value of the details of the prior conviction.

**Harmless error review**

On appeal, improper admission of other crimes evidence is subject to harmless error review; that is, whether the verdict actually rendered in the case was surely unattributable to the error. *State v. Johnson,* 94-1379 (La. 11/27/95), 664 So.2d 94; *State v. Ard, supra.* Likewise, the erroneous exclusion of evidence is subject to harmless error review. "Under that test, the question is whether there is a reasonable possibility that the admission or exclusion of certain evidence 'might have contributed to the conviction.' Furthermore, the error must be 'harmless beyond a reasonable doubt.'" *State v. Young*, 20-01041 (La. 5/13/21), 320 So. 3d 356, 361.

In this case, the defendant indisputably inflicted multiple knife wounds on the victim, and admitted to kicking her: these are "acts of force or violence" on the victim. A butcher knife is obviously a "dangerous weapon." The victim's injuries were serious – they included a collapsed lung from where he struck her in the chest and several knife wounds. Her injuries also included substantial bruising on various parts of her body. No reasonable juror could conclude that the defendant did not commit aggravated battery.

In recognition of that reality, the defendant instead argues that he acted in justifiable self-defense pursuant to La. R.S. 14:19(A)(1)(a). However, the defendant admitted that the victim was unarmed except for the boot she allegedly used to strike him. Also, he was found to be completely unharmed immediately after the incident; he apparently did not mention the alleged knot on his head to the medical examiner. With these facts, no reasonable juror could conclude that the defendant proved by a preponderance of the evidence that the force or violence used upon the victim was reasonable and apparently necessary. Simply put, even if his girlfriend did attack him with a boot and her fists, the defendant – a grown man – had absolutely no need to crush the victim's lung, stab her multiple times, and punch her in the face and kick her. The photographs of the victim's injuries, which were introduced as exhibits, thoroughly demonstrate that the force he used was grossly excessive and unnecessary in relation to any justification he may have had from the female victim's alleged attack with a boot.

Finally, even if the details of the defendant's prior domestic abuse battery had not been admitted into evidence, the defendant's self-serving

13

testimony (which was his sole basis for his self-defense claim) would still have been entirely devoid of credibility. He claimed that the victim – a female who was unarmed or armed only with a boot – was the aggressor who repeatedly attacked him even after he "punctured" her with the knife. He described in his testimony how he would "push her back with the knife" each time that she lunged in for an attack on him. This testimony by the defendant is totally unbelievable. If it were true, then the victim necessarily would have continued to make these attacks even as he inflicted at least four serious knife wounds on her. The victim would have not done this unless she was irrational to the point of suicidality. Her phone call wherein she screamed "daddy please help me" with "terror" in her voice is solid proof that she was nowhere close to being irrational to the point of suicidality – and thus was not making unarmed/nearly unarmed attacks on a man who was slashing and stabbing her with a knife.

Even if the defendant's narrative of the event were accepted as true, it still would not establish justified self-defense. Furthermore, the defendant's narrative of the event is utterly without credibility—regardless of whether or not the details of his prior domestic abuse battery conviction were admitted. Thus, even if all three of the evidentiary rulings of which the defendant complains are assumed *arguendo* to be erroneous, they were nonetheless harmless.

## CONCLUSION

The defendant's convictions and sentences for aggravated battery and child endangerment are **AFFIRMED**.

14