WILLIAMS, J.
|, The defendant, Anthony Dewayne Williams, was, charged by bill of information with aggravated battery, a violation of LSA-R.S. 14:34. Following a jury trial, the defendant was found guilty as charged. The trial court sentenced defendant to serve five years’ imprisonment at hard labor with all but three years suspended, and placed him on supervised probation for a period of three years. Defendant appeals, urging that the evidence was insufficient to support his conviction. For the following reasons, we affirm defendant’s conviction and sentence.
FACTS
The record shows that in May 2013, the defendant was arrested and charged with aggravated battery. Several witnesses testified at defendant’s trial and provided the following testimony:
Brett Thompson, a deputy with the Oua-chita Parish Sheriffs Office, testified that on May 6, 2013, at 11:39 p.m., he was dispatched to the intersection of Highway 594 and Highway 80, the location of “The *1053 Lions Stop”, gas station. There he made contact with the victim, Adam Ayala, and two witnesses, Auzunay Williams and Dakota Kulbeth. The victim stated that during an altercation' at a residence on Eisenhower Drive, defendant had punched him in the face and cut him with a box cutter. The victim was not wearing .a shirt and Deputy Thompson noticed multiple deep lacerations ■ to Ayala’s upper body area. Ayala was taken by ambulance to the hospital. ...
Deputy Thompson then went to the residence to speak with the defendant. After being advised of his Miranda ’rights, defendant stated that he and Ayala were involved in a physical altercation and that Ayala had hit |ahim several times in-his face with a closed fist. Defendant- also stated that during the alteration, he pulled out a box cutter and1 cut Ayala several times on his body. ■ b >
Deputy Thompson learned'through his investigation that defendant’s car had blocked the driveway at some point on the night in question. Defendant neither denied nor confirmed that this was true. As part of his report, Deputy Thompson noted that Ayala was 26 years old, 5'4" tall, with a weight of 220 pounds and defendant was 38 years old, 5'11",. tall, with a;weight of 230 pounds. Based on his investigation, Deputy Thompson, arrested defendant and seized a box cutter from defendant’s frqnt right pants pocket. Deputy Thompson identified the box cutter- in open court as the weapon he seized from defendant on the evening of the incident.
The victim, Ayala, a resident of Wilmer, Arkansas, testified that on May 6, 2013, he traveled to Monroe with his fíanceé, Auzu-nay Williams, his three children and Dakota Kulbeth in an SUV to visit Ramona Jones, who is the mother .of Auzunay Williams. Ayala stated that defendant, who is Ramona’s brother, appeared upset when he entered the house on the evening of the incident. At some point, Ayala overheard defendant talking on the phone, purportedly about Ayala, who then went outside to smoke a cigarette. Defendant followed him outside, cursed and hit Ayala. They wrestled in the yard until they were separated by Auzunay. Ayala told her to gather, the children so they could leave. Noticing that defendant was heading toward the house, Ayala went to the street. Defendant followed and the two began to fight in the street until they were stopped by others. |sAuzunay and Dakota Kulbeth began loading the kids into the vehicle.
Ayala’s vehicle was parked in the one-car driveway of the residence. Initially, Ayala was clear to depart the driveway. However, defendant moved his vehicle to block the entire driveway and went inside. The kids were still being loaded into the car when defendant . returned outside. While Ayala was sitting in, his vehicle, defendant approached, opened the driver’s door and again hit Ayala with his fist approximately four or five times.- When Ayala finally got out of the car, he could not run as defendant was directly in front of him. Ayala tried to defend himself until they were separated. Ayala never noticed defendant use a weapon during their fights that evening. While Ayala was driving away from the residence, the passengers noticed that he was bleeding and .saw blood all over the side of the car. When Ayala stopped at the first gas station, he realized he had been cut or stabbed and then called the police. Ayala suffered approximately six or seven wounds to his chest, his left arm, and his neck. The cuts were deep and required approximately 21 staples.
Auzunay Williams testified that on the evening in question she was visiting her mother, Ramona Jones, and was unaware that defendant was living at her mother’s *1054 home at the time. Auzunay-stated that people were drinking before, the altercation and that she observed defendant attack Ayala-three times. -When the first attack began, Auzunay was inside the home, getting her family and things ready to leave. When she heard the disturbance, Auzunay went-outside and saw defendant on-top of Ayala while they-were both on .the ground. Auzunay went- over and grabbed I ¿defendant to separate them. As she was heading back toward the- home, she observed defendant reach into' the window-of the vehicle where Ayala was sitting. At some point, Ayala got out of the vehicle and he and defendant, resumed fighting. Eventually, the. two were pulled apart by Auzunay. After this second..attack, Ayala returned to the vehicle and defendant went inside the house.
Auzunay testified that she initially observed defendant’s vehicle parked in the street. While Auzunay did • not observe ■defendant' move -his vehicle, as she was inside-the homie at that point, she did notice the ear blocking the driveway when she exited the home. She also noticed Ayala trying to drive away and she saw defendant pulling Ayala out of his vehicle. Auzunay observed Kulbeth in the back seat holding the children in -place. Once defendant was able to pull Ayala out of the vehicle; they began to fight.- This third fight ended when Auzunay pulled defendant away and she 1 observed défendant, make a maneuver as if he was- putting something in his right pocket. Soon thereafter, Auzunay noticed blood trickling from Ayala and observed several cuts on his body.
Dakota Kulbeth testified that' he traveled to Monroe with his friends, Adam Ayala and Auzunay Williams, and was present at the house when .the incident occurred. Kulbeth testified that he was inside the home when he heard a commotion. He then went outside and saw defendant on top of Ayala, who looked as if he was defending himself. The first fight was quick and ended when Auzunay and her mother pulled the two apart. After the first fight, Kulbeth observed Ayala walk to the road. - Kulbeth was -told to | Joad the children into the vehicle. Kul-beth then observed defendant walk out to the road and begin hitting Ayala. The second fight was also brief. After the second fight, Kulbeth overheard defendant yell at ■ Ayala .using, profanity. Kulbeth was still loading the,children into the vehicle with the back door -open when defendant approached. Defendant had previously blocked their vehicle in the driveway. Kulbeth saw defendant trying to open the •vehicle door. Ayala then stepped out of the vehicle and the third fight ensued. After the fight ended, Kulbeth and -his friends drove away to a gas station and he saw blood on the vehicle.
The defendant testified that on -May 6, 2013, he was living at the residence of his sister,' Ramona Jones, on Eisenhower Drive, along with his brother-in-law, his sister’s two children, and his daughter. On the night in question, defendant arrived at his sister’s home at about 10:00 p.m. and observed Aiizunay, Kulbeth, and Ayala outside drinking beer. Defendant stated that he was taking grocery bags from tis car when Ayala cursed at him, but he did not respond at that time. According to defendant, the first fight began when Ayala ran up and hit him in his face and chest. In defending himself, defendant hit Ayala, who lost his footing and stumbled to the ground. Then Auzunay jumped on defendant’s back and choked him. Kulbeth pulled defendant by his feet. Defendant had one hand on the fence and one hand holding Ayala. The fight ended when Ramona Jones approached and pulled Auzunay off of defendant.
*1055 After the first fight ended, Ayala rushed over and punched defendant" in his eye while they were still in the yard. Ayala then ran and jumped into-lnhis vehicle and, tried to leave. At this time defendant tried to call the police, hut could not locate his phone. Ayala informed the others that defendant was calling the police and told everyone to hurry and leave. At that point, defendant moved his vehicle and blocked the driveway. Ayala then drove across the neighbor’s yard. Ayala and defendant then began fighting in a ditch. At some point, Auzunay “football tackled” and choked defendant. Kulbeth again pulled defendant by his feet. Defendant then pulled out a box cutter that he regularly carried for his job because he could not get Auzunay, Kulbeth, and Ayala off of him.
On cross-examination, defendant identified the box cutter that he used in the fight to slash Ayala, and agreed that it is a dangerous weapon. Defendant conceded that there were three fights that evening and that he had used the box cutter in the third fight. Defendant alleged that after Ayala drove his vehicle through the neighbor’s yard into the street, the vehicle then stopped and Ayala and the others all got out to beat him. Defendant admitted that he is the person responsible for the' lacerations to Ayala and that at the time, he did not explain to the officer why he blocked the driveway. Defendant stated that he refused to talk further after the officer called him a liar for saying he had been attacked by three individuals. On rebuttal, Deputy Thompson clarified that he was never told by defendant that three individuals had attacked him on the evening in question.
At the conclusion of the trial, the jury found defendant guilty of aggravated battery. The trial court denied defendant’s' motions for new trial and for post-verdict judgment of acquittal. At sentencing, the trial court ^considered the facts of the ease, a presentence investigation report, other filings by - the defendant, and the sentencing guidelines of LSA~C.Gr.P. art. 894.1. The trial court sentenced defendant to five years’ imprisonment at hard labor with all but three years suspended, and placed defendant on supervised probation for a period of three years. Defendant’s motion to reconsider sentence was denied and this appeal followed.
DISCUSSION
The defendant contends the state failed to present sufficient evidence to support the conviction.. Defendant argues that the guilty vei’diet should be reversed because the testimony at trial was contradictory, inconsistent, biased and unreliable.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential1 elements:,of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 448 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 660 (1979); State v. Tate, 2001 1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in LSA-C.Cr.P, art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 617; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the- sufficiency of | ^evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in *1056 the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Parker, 42,311 (La.App.2d Cir.8/15/07), 963 So.2d 497; State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Where there is conflicting testimony about factual matters,- the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2596 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 2002-3090 (La.11/14/03), 858 So.2d 422.
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the 19extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). Credibility determinations are the province of the trier of fact. State v. Johnson, 38,927 (La.App.2d Cir.11/23/04), 887 So.2d 751; State v. Powell, 27,959 (La.App.2d Cir.4/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520.
Aggravated battery is a battery committed with a dangerous weapon. LSA-R.S. 14:34. A battery is the intentional use of force or violence upon the person of another. LSA-R.S. 14:33. A “dangerous weapon” includes any instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm. LSA-R.S. 14:2. Regarding self-defense, LSA-R.S. 14:19 provides, in pertinent part:
A.(l) The use pf force or violence upon the person of another is justifiable[:]
(a) When committed for the purpose of preventing a forcible offense against the person or a forcible offense or ti-espass against property in a person’s lawful possession, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense.
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner, that his adversary knows or should know that he desires, to withdraw and discontinue the conflict. LSA-R.S. 14:21. In a non-homicide situation, a claim of self-defense requires a. dual inquiry: first, an objective inquiry into whether the force used was. reasonable under the | mrircumstances; and, second, a subjective inquiry into whether the force used was apparently necessary. State v. Robinson, 37,043 (La.App.2d Cir.5/14/03), 848 So.2d 642.
The standard of proof when a defendant claims self-defense in a non-homicide case is a preponderance of the evi *1057 dence. State v. Ford, 42,928 (La.App.2d Cir.2/13/08), 976 So.2d 321. In some cases, this and other courts have also required that the state must then prove beyond a reasonable doubt- that the defendant did not act in self-defense. However, the- supreme court has not clearly approved of this additional burden. As previously stated by this court, the jurisprudence does not clearly define or allocate the burden of proving self-defense in a non-homicide ease. See State v. Robinson, supra; State v. Goosby, 47,772 (La.App.2d Cir.3/6/13), 111 So.3d 494, writ denied, 2013-0760 (La.11/1/13), 126 So.3d 418 (noting that this court has held that the burden of proof of self-defense in a non-homicide case rests upon the defendant. That burden of proof is a preponderance of the evidence, not beyond a reasonable doubt).
In the present case, to convict the defendant of aggravated battery, the state was required to prove a battery committed with a dangerous weapon. At trial, defendant admitted that he used a box cutter to inflict serious injury to the victim. ■ Thus, the state proved beyond a reasonable doubt that a dangerous weapon was used in the offense.
A battery is the intentional use of force or violence upon the person of another. Here, all four eyewitnesses, including defendant, testified that there were three fights that occurred on the evening in question, with theJjjthird fight producing the lacerations to the victim, Adam Ayala. Defendant admitted that he caused the lacerations to Ayala, but asserted that he did so iq self-defense. However, the defendant’s claim that the victim initiated the fight was contradicted by the evidence showing that after the first two fights, defendant moved his vehicle to block Ayala’s attempt to leave and by the defendant’s own statement that he had told Ayala to “Get out and fight like a man,” at one -point of the altercation. Although the state’s three eyewitness accounts vary as to sóme details concerning what happened on the evening in question, the jury reasonably deemed the witnesses’ accounts that defendant was the aggressor as more credible than the defendant’s testimony.
Additionally, there was evidence that defendant had the box cutter on his person, clipped to his pants, all evening. Although he allegedly lost his cell phone, which was. also on his person that evening, the box cutter remained clipped onto his' right pants pocket until the third fight. ■ This was the same pocket in which Auzunay observed defendant place something and from which Deputy Thompson retrieved the box cutter. Defendant alleges that he was attacked during all three fights, but at no point during the first or second fight did he use the box cutter. Moreover, during the last fight when Ayala was cut, defendant.alleged that he was.being attacked by three individuals, but somehow his hands were still available to grab the box cutter and repeatedly slash only the victim and not the others. The defendant’s assertion at trial that he was attacked by all three individuals appears to be nothing more than a self-serving justification which he' did not 112mention to the investigating officer shortly after the incident. The state presented ample evidence to show that defendant was the aggressor in all three fights, so that the jury was entitled to find that defehdaht' failed to satisfy his burden of provirig that he acted iii self-defense. Thus, the record contains sufficient evidence to support the defendant’s conviction of aggravated battery. Accordingly, the assignment of error lacks merit.
' In reviewing the record for error patent, we note that at sentencing, the trial court informed defendant that he would have two years to apply for post-conviction re *1058 lief from the date his “sentence” became final.- LkSA-O.Cr.P. art. -930.8 provides that an application for post-conviction relief must be.filed within two years after the judgment of conviction and sentence has become final and - we hereby notify - defendant of this time limitation by this opinion,
. CONCLUSION
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED. ' • -