Judgment rendered March 3, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,809-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

CHRISTIAN A. SATTERFIELD                    Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 361141

Honorable Charles G. Tutt, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Peggy J. Sullivan

JAMES E. STEWART, SR.                Counsel for Appellee
District Attorney

WILLIAM C. GASKINS
ALEX L. PORUBSKY
MALLORY RICHARD
Assistant District Attorneys

* * * * *

Before MOORE, COX, and BLEICH (*Pro Tempore*), JJ.

**BLEICH, J. (*Pro Tempore*).**

The defendant, Christian Satterfield, was charged with aggravated battery, a violation of La. R.S. 14:34. After a jury trial, defendant was found guilty as charged pursuant to a unanimous verdict. The trial court sentenced defendant to imprisonment for two years at hard labor. Defendant appeals his conviction and sentence. For the following reasons, we affirm.

## FACTS

The record shows that on the evening of September 14, 2018, Shreveport police officers responded to a 911 call regarding a stabbing at the Stone Forks restaurant parking lot in Shreveport. The officers were directed to a nearby Circle K store to contact the victim, Bobby Frasier, who informed officers that defendant had attacked him with a knife, causing wounds to his head and arm. Defendant was arrested the next day and admitted to the investigating officer that he stabbed Frasier with a knife. Defendant was subsequently charged with aggravated battery.

At trial, Bobby Frasier gave the following testimony: Frasier and Joseph Cockrell had been dating since December 2017, and had broken up just before this incident occurred; Frasier did not know defendant and had not met him before; on September 14, 2018, Frasier texted Cockrell via cell phone about returning Cockrell's laptop and PlayStation game console to him; they agreed that Frasier would bring the items to Cockrell at the Stone Forks restaurant after work at 10:00 p.m.; Frasier asked Lindsey Parker, his friend since childhood, to drive him to meet Cockrell; when they arrived in the restaurant parking lot that night, no one was outside; Frasier texted Cockrell, but did not get a response; when someone walked outside the building and approached them, Frasier assumed the person was Cockrell and

stepped out of the car; Frasier then realized it was defendant, who asked Frasier for Cockrell's belongings; Frasier refused to hand them over because he had never met defendant before and was uncomfortable giving him Cockrell's belongings. Defendant responded by suddenly, and without hesitation, striking Frasier in the head; with the falling rain, Frasier was initially unaware that he was bleeding and simply thought that he had been punched in the head. Frasier, unarmed but upset, followed his attacker as he ran to another vehicle in the parking lot; defendant then struck Frasier in the arm and entered his vehicle; he almost backed over Frasier as he was leaving the parking lot.

Frasier returned to Parker's vehicle, where Parker was on the phone with police; they initially attempted to follow defendant, but then stopped at a Circle K store down the street and waited for the police and paramedics to arrive. Frasier was transported to the emergency room and received four stitches in his arm; the wound in his head was near his eye, so the doctors used glue instead of stitches; Frasier identified State's Exhibit 1 as pictures taken by Parker that showed his injuries; he thought Cockrell worked at Stone Forks, did not know that defendant worked there and did not call him there; the police did not ask Frasier to save the text messages from Cockrell and they were eventually erased from his phone. Frasier followed defendant to ask why he hit him; Frasier had no intent to harm defendant and had not threatened him verbally or physically.

Lindsey Parker testified as follows: on September 14, 2018, she drove Frasier to the Stone Forks restaurant so that he could return items to his ex-boyfriend, Cockrell; Parker felt that Frasier was upset and hurt about the breakup; based on what Frasier told her about the agreed meeting, Parker

2

was expecting Cockrell to walk out of the building; Parker was aware that defendant and Cockrell were dating, but she did not know defendant at that time; when defendant walked out of the building, he appeared calm; Parker heard defendant say that he would get Cockrell's things, and Frasier refused to give the items to anyone but Cockrell; she did not recall the conversation being heated and did not recall hearing any negative words, but things became physical "really quickly and unexpectedly"; Parker watched as defendant walked up and suddenly stabbed Frasier in the head; Parker never saw Frasier get physically or verbally aggressive with defendant; she did not know that defendant had any weapon until she saw the blood coming from Frasier's head; Parker saw that defendant ran to his truck and that Frasier ran after him, but did not see Frasier get struck a second time in the arm.

Parker was already on the phone with the police when Frasier returned to her vehicle and wanted to follow defendant; she was shaking too badly to pursue defendant, so she pulled into a Circle K gas station several blocks away, and they waited for the police and paramedics; she accompanied Frasier to the hospital, where they learned that Frasier's wounds were not as bad as they thought; Parker did not see that Frasier was armed with anything and did not see Frasier attack defendant; Parker maintained that defendant was the aggressor; Frasier was still upset about the breakup as they drove to meet Cockrell; Frasier told Parker that the attacker's name was Christian Satterfield as she was speaking with the police on the phone. Parker acknowledged prior convictions for possession of Xanax and Lortab, simple battery, and driving while intoxicated, and that she had charges pending, but denied being promised any inducements or leniency in exchange for her

3

testimony.  Parker denied being under the influence of anything at the time of the incident, and at trial.

Shreveport patrol officers Jemela Freeman and Andre Wilson testified that they responded to the 911 call of a stabbing at the Stone Forks restaurant.  After arriving at the empty parking lot of the business, they were redirected to the nearby Circle K gas station, where they found Frasier and Parker.  Officer Freeman observed that Frasier seemed frantic.  Both officers observed the wounds to Frasier's head and arm, and Officer Freeman noted that there was blood everywhere.  Officer Freeman testified that Frasier said he had gone to the restaurant to return some belongings to his ex-boyfriend, but was met by his ex's new boyfriend, defendant, who wanted to take the items.  Frasier told the officers that he refused to give defendant the items because he wanted to give them to the owner; Parker told the officers that defendant pulled out an unknown sharp object and stabbed Frasier twice, once in the head and once in the arm.  Along with this testimony, the jury viewed the dash cam video from Officer Freeman's police vehicle that contained the voices of Frasier and Parker describing the incident.

Shreveport police investigator Marlon Clark testified about his investigation into the incident as follows:  he attempted to record his 15-minute interview with defendant but the machine failed to properly record; he used his handwritten notes taken during the interview to prepare his report and he was still in possession of his notes, which he had not turned over to the district attorney's office; defendant said in his statement that he was working at Stone Forks that day, and he had received several threatening phone calls from Frazier on the restaurant phone; defendant said that after closing the restaurant at 10:00 p.m., he went outside and was

4

confronted by Frasier; initially, defendant told the officer that he was unarmed and that he did not stab Frasier, but that he may have punched Frasier; defendant later admitted that he had a steak knife from the restaurant on his person and that when Frasier confronted him, he stabbed Frasier with it before he fled the scene; defendant said that he brought the steak knife with him because he was worried that Frasier was going to be there and then returned the knife to Stone Forks; when asked why he did not call the police after Frasier made the phone calls and confronted him at the restaurant, defendant told the officer that he did not have an answer; he (Officer Clark) did not obtain Frasier's phone to verify a call to the restaurant and did not obtain a search warrant, but agreed that if there was evidence that Frasier was calling Stone Forks, such evidence might indicate that Frasier instigated the conflict; Officer Clark also confirmed that none of the police officers had attempted to take pictures of the items that Frasier alleged he was returning to Cockrell that night and none of the officers took pictures of Frasier's injuries; Frasier and Parker stated that Frasier was at the restaurant parking lot to return items to Cockrell, but defendant was there instead and asked for the items; the officer acknowledged that he did not record the statement that he obtained from Parker at the hospital, even though witness statements are "typically" recorded; and he did not re-interview Cockrell after speaking with the others because Parker's account of what happened corroborated Frasier's story and defendant had confessed that he stabbed the victim.

Defendant gave the following testimony: at the time of trial, he was 32 years old and employed at Casa Jimador in Shreveport; he was previously the general manager at Stone Forks, and before that was the event and party coordinator at another restaurant; he met Cockrell through an internet dating

5

site about one month before the incident and they immediately began dating; it would be difficult to confuse him with Cockrell because Cockrell was not as tall as him and had a smaller build than him; as general manager of Stone Forks at the time of the incident, he could confirm that Cockrell did not work at Stone Forks; he knew that Cockrell previously dated Frasier, and had seen Frasier key Cockrell's vehicle; and he felt that Cockrell was fearful of Frasier, and observed that Cockrell received daily text messages from Frasier.

Defendant also provided the following testimony: while working on September 14, 2018, he received a call at 7:30 p.m. from Frasier on the Stone Forks restaurant phone; Frasier asked for Cockrell, and he told him that Cockrell was not there; Frasier said that he wanted to return Cockrell's belongings to him; he told Frasier that was a matter between Cockrell and Frasier, and that he did not like Frasier calling him where he worked; Frasier became angry and began yelling at him; he told Frasier that he was not welcome on the premises because of his hostility and hung up the phone; when closing the restaurant at 10:00 p.m., he noticed a vehicle parked in the lot and went outside to let the people inside the vehicle know the restaurant was closed and to ask if they needed anything; he had never met Frasier before, but he had seen a picture of him; Frasier told him that he had come to return Cockrell's things; he told Frasier that was between him and Cockrell and that Frasier was not permitted on the property because he had been hostile on the phone; Frasier yelled at him that he wanted to give Cockrell his belongings, and defendant replied that he would take the items to Cockrell because Cockrell was fearful of Frasier, who began pacing, yelling obscenities, and flailing his arms; he never saw the items that Frasier said he

6

wanted to return to Cockrell; defendant turned to get into his truck; as he put his hand in his pocket to get his keys, Frasier came around the car door toward him; he had silverware and a knife in his work apron, and he pulled the knife out with his keys; he felt threatened because Frasier was chasing him; when he started to open his vehicle door, Frasier came from behind and tried to grab him, so he spun around with the knife in his hand and that is how Frasier ended up with the cut on his temple and the wound to his arm; after he got inside his truck and locked the door, Frasier beat on the vehicle and yelled at him; he drove away and went home; and he did not call the police because he felt that his defensive actions would not have "looked good on him," and he was concerned that he might lose his job.

Defendant acknowledged that he stabbed Frasier with a knife, but only to defend himself. Defendant admitted that he initially was not "forthcoming" to officers about having the knife and stabbing Frasier. Defendant also insisted that Frasier instigated the incident when he showed up at defendant's place of employment, confronted him, and then chased him when he tried to leave, causing defendant to defend himself.

After the close of evidence, the six-person jury returned a unanimous verdict finding defendant guilty of aggravated battery. Defendant filed motions for post-verdict judgment of acquittal and for new trial alleging that the evidence was insufficient to sustain the conviction of aggravated battery because the state's witnesses gave inconsistent testimony showing they were not credible and the state failed to negate his claim of self-defense. Defendant also argued that a new trial was required because the state had failed to share with the defense the handwritten notes of Officer Clark from his unrecorded interview with defendant. The trial court denied the motions

7

and sentenced defendant to serve two years at hard labor. Defendant's motion to reconsider the sentence was denied. This appeal followed.

**DISCUSSION**

The defendant contends the evidence presented at trial was insufficient to support the conviction. Defendant argues that the state failed to prove beyond a reasonable doubt that he committed aggravated battery because the state's witnesses were not credible and defendant proved he acted in self-defense.

Defendant asserts that under the circumstances shown at trial, he reasonably acted in self-defense after being confronted at his workplace by Frasier, who then chased and grabbed defendant in a dark parking lot. The state argues that defendant failed to prove by a preponderance of the evidence that he acted in self-defense, because his actions were neither reasonable nor necessary under the circumstances.

A battery is the intentional use of force or violence upon the person of another. La. R.S. 14:33. An aggravated battery is a battery committed with a dangerous weapon. La. R.S. 14:34. "Dangerous weapon" includes any instrumentality, which in the manner used, is calculated or likely to produce death or great bodily harm. La. R.S. 14:2.

In considering the issue of sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*,

8

541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Frost*, 53,312 (La. App. 2 Cir. 3/4/20), 293 So. 3d 708.

The appellate court does not assess the credibility of witnesses or reweigh evidence and accords great deference to the trier of fact's decisions to accept or reject witness testimony in whole or in part. *State v. Frost, supra*. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Jackson*, 53,497 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1156.

The *Jackson* standard of review is applicable in cases involving both direct and circumstantial evidence. *State v. Frost*, *supra*. The facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Jackson, supra*.

La. R.S. 14:18 provides that the fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. La. R.S. 14:18(7) provides that this defense of justification can be claimed when the offender's conduct is in defense of persons or of property under any of the circumstances described in R.S. 14:19 through 14:22.

The use of force or violence upon the person of another is justifiable when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense. La. R.S. 14:19(A)(1)(a). In a

9

non-homicide situation, a claim of self-defense is subject to a two-part inquiry. *State v. Barron*, 51,491 (La. App. 2 Cir. 8/9/17), 243 So. 3d 1178, *writ denied*, 17-1529 (La. 6/1/18), 243 So. 3d 1063. First, there is an objective inquiry into whether the force used was reasonable under the circumstances. Second, there is a subjective inquiry into whether the force used was apparently necessary. *State v. Williams*, 50,004 (La. App. 2 Cir. 9/30/15), 178 So. 3d 1051.

A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows, or should know, that he desires to withdraw and discontinue the conflict. La. R.S. 14:21; *State v. Williams, supra*. No finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used force or violence in defense of his person or property had a reasonable belief that force or violence was reasonable and apparently necessary to prevent a forcible offense or to prevent the unlawful entry. La. R.S. 14:19(D).

The statutes do not clearly define or allocate the burden of proving self-defense in a non-homicide case. *State v. Williams, supra*. This Court has repeatedly held that the burden of proving self-defense in a non-homicide case rests with the defendant to prove the defense by a preponderance of the evidence. *State v. Barron, supra*. In *State v. Jackson*, 51,841 (La. App. 2 Cir. 1/10/18), 246 So. 3d 646, this Court noted that while the burden of proof was the defendant's by a preponderance of the evidence, the Court in some cases also required that the state must then prove beyond a reasonable doubt that the defendant did not act in self-defense. This Court

has also noted, however, that the Louisiana Supreme Court has not clearly approved of this additional burden. *Id.*

In *State v. Jackson, supra*, the jury was instructed that the defense has the burden of proving by a preponderance of the evidence that his actions were in self-defense and that the state must prove beyond a reasonable doubt that the defendant did not act in self-defense. This Court held that the defendant did not prove by a preponderance of the evidence that he acted in self-defense. *Id.* This Court also held that the state met its burden of proving beyond a reasonable doubt that the defendant's attempted homicide was not perpetrated in self-defense. *Id.*

To convict defendant of aggravated battery in this case, the state was required to prove that he committed an intentional battery on Frasier with a dangerous weapon. At trial, the victim, Frasier, and the eyewitness, Parker, both testified, and defendant admitted, that he intentionally used a knife and inflicted injury on the victim. Frasier's testimony that he suffered wounds to his head and arm was corroborated by the testimony of Parker and Officers Freeman, Wilson, and Clark. La. R.S. 14:34 does not include serious bodily injury as an element of the offense, so whether Frasier's wounds were superficial or serious is irrelevant. Thus, the state proved beyond a reasonable doubt that defendant committed aggravated battery in using a dangerous weapon, a knife, to intentionally commit a battery on Frasier.

In this case, as in *State v. Jackson, supra,* the jury was advised as follows:

> The burden of proof is on the State to prove the offense beyond a reasonable doubt. The defendant must prove a claim of self-defense by a preponderance of the evidence. A preponderance of the evidence means more probable than not. If a preponderance of the evidence shows that the defendant acted

11

in self-defense, then the State must prove beyond a reasonable doubt that the defendant did not act in self-defense.

Defendant was thus required to prove that his use of force and violence, though otherwise criminal, was justified because he acted in defense of his person, to prevent a forcible offense against him, and that the force used was reasonable under the circumstances and apparently necessary.

Even taking defendant's assertions as true, that Frasier repeatedly called the restaurant that day and that Frasier was upset and "manic" because he could not return the items directly to Cockrell, the jury could have determined, based upon the evidence presented at trial, that defendant was not in danger of a forcible offense that justified his use of a knife against an unarmed person. Furthermore, defendant's testimony that Frasier keyed Cockrell's vehicle and was sending daily "harassing" text messages to Cockrell described actions made toward Cockrell, not defendant. The only evidence presented at trial regarding Frasier's behavior, prior to being stabbed in the head by defendant, was testimony by Parker that Frasier was still upset about the breakup with Cockrell and defendant's statement that Frasier had tried to grab him.

Regarding the sequence of events – whether defendant stabbed Frasier first and then Frasier chased him, or whether Frasier first chased defendant, who then stabbed Frasier in defense – we have only the testimony of defendant, Frasier, and Parker. The determination of who did what first, based on the limited evidence presented at trial, required a credibility determination by the jurors, whose verdict indicates that they found Frasier and Parker's testimony more credible than that of defendant.

12

As noted above, if defendant was the aggressor, he would be precluded from raising a self-defense claim unless he could show that he withdrew from the conflict in good faith and in such a manner that Frasier knew, or should have known, that he desired to withdraw and discontinue the conflict. Defendant argues that if the police had obtained Frasier's phone records, then that evidence would have established that Frasier called defendant at Stone Forks that day, but such evidence would not, by itself, establish Frasier as the aggressor as defendant claims. Defendant also asserts that Frasier's phone, with text messages, could have been used to determine the veracity of Frasier's statement that he appeared at Stone Forks that night to return Cockrell's belongings, and not just to confront Cockrell's new boyfriend, defendant. Even assuming that Frasier was not being truthful, and Cockrell's belongings were just an excuse for him to talk to Cockrell or defendant, such evidence would only impact Frasier's credibility, and would not, by itself, establish Frasier as the aggressor, even if none of what followed would have happened had he not appeared at the restaurant.

The only evidence before the jury was that Frasier told defendant that he had items to return to Cockrell and that he would give them only to him. Frasier testified that defendant then stabbed him; defendant testified that Frasier chased him and then he stabbed Frasier as he was running to flee in his vehicle. Again, this is a credibility determination for the jury, and the jury found that Frasier's version of the incident, regarding who was the aggressor, was more credible.

When considered in a light most favorable to the prosecution, the evidence was sufficient for the jury to reasonably conclude that defendant

13

failed to show by a preponderance of evidence that he was acting in self-defense, and that the state proved beyond a reasonable doubt that defendant was guilty of aggravated battery. This assignment is without merit.

Defendant contends the trial court erred in denying his motions for post-verdict judgment of acquittal and for new trial. All assignments of error and issues for review must be briefed. The court may consider as abandoned any assignment of error and issue for review which has not been briefed. U.R.C.A. 2-12.4(B)(4).

Defendant's appellate attorney combined this assignment of error with the first assignment in her brief. The combined argument addresses the errors raised in the motion for post-verdict judgment of acquittal regarding the inconsistent testimony of the state's witnesses and the self-defense claim, but does not address the argument raised in the motion for new trial regarding the absence of the investigator's notes from his interview with defendant. Assignments of error which are neither briefed nor argued are considered abandoned. U.R.C.A. Rule 2-12.4; *State v. Jones*, 48,458 (La. App. 2 Cir. 11/20/13), 128 So. 3d 593, *writ denied*, 13-2926 (La. 5/30/14), 140 So. 3d 1173. Accordingly, that argument is considered abandoned.

Defendant also contends the trial court erred in requiring him to meet an affirmative burden of proof that he acted in self-defense. Defendant argues that the burden of proving guilt rests upon the state because the Louisiana Constitution provides that every person charged with a crime is innocent until proven guilty.

A party may not assign as error the giving or failure to give a jury charge unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of

14

the objection and the grounds therefor shall be stated at the time of the objection. La. C. Cr. P. art. 801.

As noted above, La. R.S. 14:18 allows for the use of affirmative defenses, such as justification, and La. R.S. 14:19 provides the statutory standard by which the use of force or violence in a non-homicide case is deemed justifiable – the action must be reasonable and apparently necessary. Failure to raise an objection to these statutes, or to a jury instruction explaining these statutes, in the trial court precludes the defendant from raising such objections on appeal. *State v. Barron, supra.*

In *Barron*, the defendant was also charged with aggravated battery. This Court rejected the defendant's claim that the trial court erred in instructing the jury that he had the burden of proving self-defense in a non-homicide case and held that there was no error in the instructions given. This Court also noted that in *State v. Freeman*, 427 So. 2d 1161 (La. 1983), the supreme court observed that the defendant in a non-homicide case may have the burden of proving self-defense by a preponderance of the evidence, since a subjective inquiry is involved. This Court also noted *Martin v. Ohio*, 480 U.S. 228, 235, 107 S. Ct. 1098, 94 L. Ed. 2d 267 (1987), in which the United States Supreme Court held that placing the burden on the defendant to prove by a preponderance that she acted in self-defense in a murder did not violate due process because the state must still prove every element of the offense. *State v. Barron, supra.*

As noted by defendant, La. R.S. 14:18 and La. R.S. 14:19 do not expressly change the state's burden to prove the defendant guilty of the offense charged beyond a reasonable doubt. However, neither do the statutes assign the state a greater burden of proof regarding a defendant's

15

claim of an affirmative defense and the jurisprudence has found there is no due process violation by requiring the defendant in a non-homicide case to bear the burden of proof to show that he was defending himself against a forcible offense. Defendant had the opportunity to justify his actions and show that, under the circumstances at the time of the offense, his actions were reasonable and apparently necessary. The verdict shows that the jury found that he failed to do so. To the extent that defendant would argue that the jury received an improper instruction, he failed to raise his objections before the trial court and preserve the issue for appeal. This assignment of error lacks merit.

Defendant contends the trial court erred in imposing an excessive sentence and in denying his motion to reconsider sentence. Defendant argues that the two-year sentence is harsh considering that he had no prior felony convictions, he had been gainfully employed for years, and the trial court failed to consider these mitigating factors.

An excessive sentence claim is reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1, and whether the sentence is constitutionally excessive. *State v. Wing*, 51,857 (La. App. 2 Cir. 2/28/18), 246 So. 3d 711. A review of the sentencing guidelines does not require a listing of every aggravating or mitigating circumstance. *State v. Boehm*, 51,229 (La. App. 2 Cir. 4/5/17), 217 So. 3d 596. When the defendant's motion to reconsider sentence raises only a claim that the sentence imposed was constitutionally excessive, review of the sentence on appeal is restricted to that claim. La. C. Cr. P. art. 881.1; *State v. Williams*, 51,667 (La. App. 2 Cir. 9/27/17), 245 So. 3d 131.

16

Pursuant to La. Const. art. I, § 20, the reviewing court considers whether the sentence is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Boehm, supra.* A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Wing*, *supra.*

The court must state for the record the considerations taken into account and the factual basis for the sentence imposed. La. C. Cr. P. art. 894.1(C). The court must consider the defendant's personal history, the defendant's criminal record, the seriousness of the offense, and the likelihood of rehabilitation. *State v. Boehm, supra.* There is no requirement that specific matters be given any particular weight at sentencing. *Id.* All convictions and all prior criminal activity may be considered, as well as other evidence normally excluded from the trial. *State v. Platt*, 43,708 (La. App. 2 Cir. 12/3/08), 998 So. 2d 864.

A trial court has wide discretion in imposing a sentence within the statutory limits, and a sentence should not be set aside absent a showing of abuse of discretion. *State v. Vanhorn*, 52,583 (La. App. 2 Cir. 4/10/19), 268 So. 3d 357, *writ denied*, 19-00745 (La. 11/19/19), 282 So. 3d 1065; *State v. Weston*, 52,312 (La. App. 2 Cir. 11/14/18), 260 So. 3d 722. Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence. *Id.*

The statutory sentencing range in this case states whoever commits an aggravated battery shall be fined not more than $5,000, imprisoned with or without hard labor for not more than 10 years, or both. La. R.S. 14:34(B).

17

Prior to imposing sentence, the trial court noted that it had considered the sentencing guidelines of La. C. Cr. P. art. 894.1 and found that there was an undue risk that defendant would commit another crime if given a suspended sentence, that defendant was in need of a custodial environment, and that a lesser sentence would deprecate the seriousness of the offense. Finding that defendant's crime was a "needless violent act," the trial court sentenced defendant to serve two years at hard labor.

The record shows that the trial court was informed at sentencing that defendant attempted to make restitution to Frasier. The trial court did not articulate mitigating factors, but having presided over the trial, the court was aware that defendant had been gainfully employed for several years and the extent of his criminal history.

In this case, an emotional argument escalated into an aggravated battery when one person suddenly stabbed the other person in the head and arm with a knife. The relatively minor nature of Frasier's injuries does not diminish the fact that defendant struck an unarmed man in the head with a knife, creating the risk that the victim might have been blinded or worse. In addition, the evidence produced at trial did not show that defendant faced a threat of forcible offense from the victim.

Under the circumstances of this case, the imposition of a two-year sentence, which is at the lower end of the sentencing range for this offense, does not shock the sense of justice. There is no showing that the sentence is constitutionally excessive or that the trial court abused its discretion in imposing sentence. This assignment of error lacks merit.

*Error Patent*

La. C. Cr. P. art. 930.8(C) requires the trial court to inform the defendant of the limitations period for filing an application for post-conviction relief at sentencing. If a trial court fails to properly advise the defendant of the time period limitations for filing, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion.

The trial court here inadvertently informed the defendant that he had two years from the date that his sentence was final to seek post-conviction relief. By way of this opinion, this Court hereby advises defendant that no application for post-conviction relief shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. arts. 914 or 922.

## CONCLUSION

For the foregoing reasons, the defendant's conviction and sentence are affirmed.

**AFFIRMED.**

19