Judgment rendered August 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,797-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

NATHANIEL D. CAMPBELL                       Appellant

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 22-CR-32461

Honorable Nicholas E. Gasper, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By:  Paula C. Marx

CHARLES B. ADAMS                     Counsel for Appellee
District Attorney

RHYS E. BURGESS
NANCY F. BERGER-SCHNEIDER
Assistant District Attorneys

* * * * *

Before PITMAN, STONE, and THOMPSON, JJ.

**PITMAN, C. J.**

Defendant Nathaniel D. Campbell appeals his conviction and sentence for violating La. R.S. 14:94(A) and (F), illegal use of weapons or dangerous instrumentalities during a crime of violence. For the following reasons, the conviction and sentence are affirmed.

**FACTS**

Defendant was charged with violating La. R.S. 14.94(A) and (F), illegal use of weapons or dangerous instrumentalities during a crime of violence, during an aggravated assault on Tyrek Price. The crime occurred on March 26, 2022, in DeSoto Parish. He was found guilty by a unanimous jury and sentenced to ten years at hard labor without benefits.

At trial, the following evidence was adduced:

Abdo Mohmad, owner of the Quik Snax gas station in Mansfield, Louisiana, testified that on the night of March 26, 2022, an altercation occurred on his premises. He stated he was not at the store at the time of the shooting but identified the shooting location from his store's video surveillance footage. He also stated that his son was working there at the time of the incident and called the police.

Patrol Sergeant Christopher Johnson of the Mansfield Police Department testified that he was on duty when a call came in around 11 p.m. that shots had been fired near Quik Snax. He and Ofc. Dakota Calhoun, also of the Mansfield Police Department, responded and noticed there were people arguing and fighting. He entered the store, and the clerk told him a shooting had occurred. He stated that the clerk was Abdo Mohmad, a/k/a "Papa."

Mohmad informed the officers that he had surveillance tape and offered it to them. They rewound the video approximately ten minutes and were able to identify a black truck from which the shots had been fired. While they were still on-site, another person came into the store and reported that his vehicle had been struck by a black truck.

The video was played in court and Sgt. Johnson narrated the footage. In the video, Defendant arrived in a black Dodge truck. Ofc. Johnson stated that Defendant, his girlfriend Toriana Woods, and her mother Gloria Woods, left the Quik Snax with their purchases. The women got in the truck, but Defendant had to work on the truck to get it started before they left the premises.

Sgt. Johnson stated that Price, the victim, was seen dancing and jumping around holding what he calls "a serious looking weapon." A few minutes later, Defendant's truck returned to Quik Snax with Gloria driving. He stated that as the truck entered the parking lot, he could see Defendant hanging out of the passenger side window with his hands on top of the truck holding a gun. Gloria immediately got out of the truck, and Defendant remained in the passenger window with both arms extended over the top of the cab of the truck. He then jumped out of the window while still holding the firearm. Both women and Defendant got out of the truck.

Sgt. Johnson further testified that Defendant pointed the gun at someone (a female) and then both women and Defendant returned to the truck. Price is not seen in the video at this point, but subsequently appears with a firearm in his hand pointed toward the black truck. Defendant and the two women returned to the truck; and, as it began to roll away, the back windshield was blown out by a firearm, and glass was "flying everywhere."

Bullets were fired, and Gloria opened the driver's side door and began to crawl away. The black truck hit a vehicle on the side of the building, and Price ran toward Washington St. in the O'Reilly area.

Sgt. Johnson stated that after speaking to Mohmad, he knew from Mohmad's descriptions the identity of the owner of the truck and where Gloria lived. They went to her house on Susan Street and found the black truck with the back window shot out.

Ofc. Calhoun testified that he secured the scene at the Quik Snax and found two bullet holes in one of the gas pumps. He found a .22 caliber bullet/brass lying on the side, which he was told was unrelated to the incident. He went to Gloria's house on Susan Street and detained Defendant and took him to the police station for questioning.

David Self, chief detective for the Mansfield Police Department, went to the Susan address with Ofc. Calhoun. He testified that he located the truck at that address and noted that the glass at the back of the truck had been shot from inside and that 95% of the glass was in the bed of the truck. He also testified that he located a 9mm shell casing on the dashboard as well as on the seat of the truck. Seven more shell casings were found in the bed of the truck, but the evidence bag contained eight.

Det. Self stated that Defendant admitted to being involved in the shooting and told him that his Ruger 9mm used in the shooting was on his nightstand inside and that he had fired his weapon five to eight times. After consent to search was given, the firearm, magazine and 13 9mm live rounds were secured; these were introduced in evidence at trial. Defendant gave a statement of the incident at the Quik Snax, but when Det. Self viewed the surveillance video, Defendant's story was not corroborated. Defendant

3

failed to tell him that he had left the store and then returned with a firearm. Det. Self stated that he returned to the store and searched the parking lot and found bullet fragments in the area where the black truck had been located and where Defendant fired out of the window. He also located .223 caliber shell casings in the parking lot next door to the Quik Snax, behind an oil change business, and these were compatible with Price's firearm. The surveillance footage does not cover that location during the shooting.

Tyrek Price testified that he knew Defendant and that they were on friendly terms. He did not know Gloria or Toriana Woods. He stated that he had a gun but was not pointing it at anyone. He also stated that he did not see Defendant until he came out of the store, at which time he spoke to Defendant, who did not respond. After his cousin asked him if he had any problems with Defendant, he turned around and saw Defendant pointing a gun in his face. He attempted to reach his car and leave, but Gloria was pushing and holding him. He stated that Gloria finally let him go and went back to the black truck. He testified that he grabbed his gun from the back seat of his car and aimed it at the truck, but only because he could see Defendant pointing his gun at him from the truck. He claimed after he aimed his gun at Defendant, Defendant began shooting. He put his own gun down and began running, and a bullet flew by very close to his head. He testified that he ran and hid on the side of the oil change business and then ran back to his car and left. He testified that he never fired a shot. Despite this statement, he pled guilty to illegal use of weapons and dangerous instrumentalities. The state rested.

Gloria Woods testified that she, her daughter Toriana, and Defendant went to Quik Snax. When they arrived the first time, they saw Price waving

4

a gun around. They left but had to return because Toriana had lost her credit card and ID. She stated that she was driving the truck when they returned to the store, that she got out of the car and approached Price to talk to him. She asked him why he kept "pulling guns" and said she hugged him. She also stated that while she was out of the truck, Defendant had also gotten out and there were people there with guns pointing at each other. She testified that she got back in the driver's seat, her daughter was in the middle and Defendant was in the passenger seat. She began to hear gunfire and got out of the truck to hide behind a gas pump but then returned and drove to her home. She stated that as they were leaving, Price was aiming a gun at them, and the shooting started after that. Defendant was still armed when they left the Quik Snax, and the back window of the truck had been shot out. She stated that Defendant's gun was a 9mm and that it was found at her home.

Toriana Woods testified that they went to the Quik Snax twice. The first time there they saw Price outside with a firearm. The second time they returned, Gloria drove to the store, and she (Toriana) got out to look for her belongings. When she got back to the truck, she saw Price with a rifle raised to his shoulder and aiming at the back of the truck. There were guns everywhere, and she was scared, so she got on the floor of the truck before the shooting started. She did not know who fired first.

Defendant testified that the first time they were at the store, the truck would not start. He stated that Price came up to him and said something unfriendly. He was able to get the truck started and leave; but before he left, he saw Price with an "assault rifle" in his hand dancing and waving it around.

5

Defendant stated they had to return to the store. He was agitated and hanging out of the window with a gun over the top of the cab. He testified that he, Gloria and Toriana got out and approached Price while the truck was still running. He confronted Price while aiming the 9mm gun at him but admitted that Price was not armed at the time. He testified that Price's brother, Devonte, was standing beside Price holding a gun. Price snatched Devonte's gun out of his hand and aimed it at "all of them." Devonte snatched the gun back from Price and that gun was not fired. Defendant claims he was trying to defuse the situation, but Devonte was mad and agitated and wanted to know what was going on. He told Devonte nothing was going on and that they were getting ready to leave. He waved his hand at them to indicate that the altercation was over, but he kept the gun in his hand the whole time.

Defendant further testified that he, Gloria and Toriana were back in the truck intending to leave when he saw Price aiming a gun at them. He heard shots and that is when he shot through the back window of the truck eight times. He stated that Price did not have his own gun until after the three of them were leaving the parking lot.

The jury instructions included an explanation of self-defense and the justifiable use of force or violence against a person for the purpose of preventing a forcible offense against one's own person if the use of force is reasonable and apparently necessary to prevent the offense. The jury was also instructed that a person who is an aggressor or who brings on a difficulty cannot claim the right to self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw.

The jury returned a verdict of guilty as charged of illegal use of a firearm during a crime of violence. A presentence investigation was ordered, and Defendant was sentenced to the minimum sentence of ten years at hard labor without benefit of probation, parole or suspension of sentence. Defendant appeals his conviction on the basis that the state failed to prove that he did not act in self-defense and on the insufficiency of the evidence.

## DISCUSSION

Defendant argues the two assignments of error together. He does not dispute that his actions arguably fit the definition of illegal use of a weapon by discharging a firearm during a crime of violence. However, he contends that his actions were taken in self-defense and in defense of his family; thus, he is not guilty of the crime for which he was convicted.

Defendant reiterated the facts of his testimony and claimed that while he was talking to Price, Price grabbed his brother's gun away from him and was pointing it at Defendant and the women. Devonte recovered his gun, and Defendant claimed he considered the altercation over and waved his hand to indicate that they were leaving. He argues that when he saw Price retrieve his own "assault rifle" from the back seat of his car and aim it at them as they were leaving, he was afraid for his life and that of his family, and he shot out the back window of the truck eight times. He asserts that he was no longer the aggressor when he was in the truck leaving the scene and that he shot because he saw Price aiming the gun at them.

For these reasons, Defendant argues that the evidence presented at trial was insufficient to support a conviction for the crime and that the claim of self-defense was warranted.

7

The state contends that the evidence was sufficient to convict Defendant of the crime of which he was accused and that it is clear Defendant was the aggressor in the situation. He returned to the scene hanging out of a window of the truck with a gun pointing at the victim. The state argues that it is clear this aggravated assault was not self-defense.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Jackson*, 55,312 (La. App. 2 Cir. 11/15/23), 374 So. 3d 354. *See also* La. C. Cr. P. art. 821. The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000). The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442.

A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21; *State v. Jackson*, *supra*.

The issue of self-defense requires a dual inquiry, an objective inquiry into whether the force used was reasonable under the circumstances and a subjective inquiry into whether the force was apparently necessary. *State v. Jackson*, 51,841 (La. App. 2 Cir. 1/10/18), 246 So. 3d 646, *writ denied*, 18-0284 (La. 11/14/18), 256 So. 3d 284. The standard of proof when a

8

defendant claims self-defense in a non-homicide case is a preponderance of the evidence. *Id.* In some cases, this and other courts have also required that the state must then prove beyond a reasonable doubt that the defendant did not act in self-defense. *Id.*, *citing State v. Williams*, 50,004 (La. App. 2 Cir. 9/30/15), 178 So. 3d 1051.

Not every act of a defendant will make him or her an aggressor. *State v. McGee*, 51,977 (La. App. 2 Cir. 4/3/19), 316 So. 3d 1196, *writ denied*, 19-00761 (La. 11/19/19), 282 So. 3d 1066. It is the character of the act coupled with the intent of the defendant that determines whether the defendant is the aggressor. *Id.*

La. R.S. 14:94 states in pertinent part as follows:

A. Illegal use of weapons or dangerous instrumentalities is the intentional or criminally negligent discharging of any firearm, or the throwing, placing, or other use of any article, liquid, or substance, where it is foreseeable that it may result in death or great bodily harm to a human being.

\* \* \*

F. Whoever commits the crime of illegal use of weapons or dangerous instrumentalities by discharging a firearm while committing, attempting to commit, conspiring to commit, or soliciting, coercing, or intimidating another person to commit a crime of violence or violation of the Uniform Controlled Dangerous Substances Law, shall be imprisoned at hard labor for not less then ten years nor more than twenty years, without benefit of parole, probation, or suspension of sentence.

In order to prove illegal use of weapons, the state must prove beyond a reasonable doubt that the defendant (1) intentionally or in a criminally negligent manner discharged a firearm, and (2) that he did so when it was foreseeable that death or great bodily harm to a person might result. *State v. Brown*, 47,174 (La. App. 2 Cir. 6/20/12), 93 So. 3d 873, *writ denied*, 12-1661 (La. 2/8/13), 108 So. 3d 78.

9

The evidence of the video, combined with the testimony of the witnesses, is sufficient to show that the state has proven beyond a reasonable doubt every element of the crime of illegal use of weapons or dangerous instrumentalities, a violation of both La. R.S. 14:94 (A) and (F). The state has also met its burden of proof that Defendant was not acting in self-defense when he returned to the Quik Snax, hanging out of the truck window while pointing a gun over the cab as it entered the parking lot. Further, the Defendant's own testimony confirmed that the victim was not armed at the time he confronted him, that Price's brother had already taken his gun away from him, and that it was not until Defendant returned to the truck and was pointing the gun at him that Price was able to retrieve his rifle from the back seat of his car. Defendant fired on him through the back window of the truck as he and the two women drove away. These are the acts of an aggressor, and he did not withdraw from the conflict in good faith and in such a manner that his adversary knew or should have known that he desired to withdraw and discontinue the conflict.

For these reasons, the assignments of error are without merit.

## CONCLUSION

For the foregoing reasons, the conviction and sentence of Defendant Nathaniel D. Campell are affirmed.

**AFFIRMED.**